# United States Court of Appeals
## For the First Circuit

No. 04-2475

CALVIN R. JOHNSON,

Plaintiff, Appellant,

v.

ALLEN GORDON, JR., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]
[Hon. Robert B. Collings, U.S. Magistrate Judge]

Before

Selya, Lynch and Lipez,
Circuit Judges.

Burton A. Nadler, with whom Petrucelly & Nadler, P.C. was on brief, for appellant.
Cynthia S. Arato, with whom Manatt, Phelps & Phillips, LLP was on brief, for appellees.

May 31, 2005

**SELYA**, <u>**Circuit Judge**</u>. Music is an international language that has the capacity to bring together people from every corner of the world. It is also an economic engine, capable of yielding financial gain to those who own and control it. This appeal, which involves a controversy over the authorship of a hit song, exposes us to that coarser side of the music industry.

An allegation of plagiarism lies at the heart of this matter: plaintiff-appellant Calvin R. Johnson claims that a bevy of defendants unlawfully copied parts of his musical composition "You're the One (For Me)" in order to produce a song entitled "You're the One." After the defendants' song was recorded by the popular singing trio Sisters With Voices (SWV), it shot to the top of the charts.

The plaintiff subsequently commenced a copyright infringement action. The district court rejected the plaintiff's core contention of substantial similarity and granted summary judgment for the defendants. The plaintiff appeals. Discerning nothing off-key in the lower court's decision, we affirm.

## I.

### Background

We rehearse the background facts in the light most generous to the party opposing summary judgment (here, the plaintiff) and resolve all reasonable inferences in that party's

-2-

favor.  <u>Int'l Ass'n of Machinists</u> v. <u>Winship Green Nursing Ctr.</u>, 103 F.3d 196, 200 (1st Cir. 1996).

On March 11, 1999, the plaintiff filed a complaint in federal district court against eighteen defendants, alleging in substance that they had infringed the copyright of his musical composition, "You're the One (For Me)," in violation of 17 U.S.C. § 501, and relatedly, that they had failed to credit him as an author of a song released commercially by SWV entitled "You're the One," in violation of the Lanham Act, 15 U.S.C. § 1125(a).[1]  For purposes of this appeal, we take as true certain of the facts alleged in the complaint (the parties having stipulated that those allegations, though disputed in part by the defendants, may be credited for the limited purpose of deciding the summary judgment motion).  These include the facts as to the origin of the copyrighted work, i.e., that the plaintiff created the musical composition "You're the One (For Me)" for a band called Special Edition sometime between 1990 and 1992.  They also include the

_____

[1]In enumerating the roster of defendants, the complaint identifies Allen Gordon, Jr., Andrea Martin, Ivan Matias, Tamara Johnson, and Cheryl Gamble as authors credited with composing "You're the One"; SWV and Johnson, Gamble, and Leanne Lyons (who collectively comprise SWV) as the ones responsible for the commercial release of the song; Al's Street Music, Rondor Music International, Inc., Sailandra Publishing, One Ole Ghetto Ho, WB Music Corp., Wonder Woman Sings Publishing, and Warner-Chappell Music, Ltd. as the publishers of the song and the registered owners of copyrights for it; Gordon and Head Up Entertainment, Ltd. as the song's producers; and BMG Music, Bertelsmann Music Group, Inc., and Ariola Eurodisc, Inc. as the song's distributors.

averment that, in 1994, the plaintiff met with Kenny Ortiz, a vice-president of RCA Records (a division of BMG Music) to discuss the possibility of signing Special Edition to a record deal. At that meeting, the plaintiff gave Ortiz a videotape and audio demo tapes of Special Edition performing "You're the One (For Me)."

Special Edition apparently was not the one for RCA and the company never offered the group a recording contract. The complaint further alleges, however, that unbeknownst to the plaintiff, Ortiz gave the tapes of the plaintiff's song to SWV (a vocal group under contract to RCA) and that SWV then reworked it with the assistance of other defendants to create "You're the One."

It is not disputed that, in March of 1996, BMG released SWV's recording of "You're the One" as a single. The song enjoyed considerable commercial success, rocketing to the top of the Billboard R&B singles chart. The next month, the song was released as part of SWV's album "New Beginning," which became a gold record.

Dismayed by these developments, the plaintiff filed a copyright application for "You're the One (For Me)" and deposited a copy of the sheet music for the song with the United States Copyright Office. The Copyright Office issued a copyright registration for the musical composition to the plaintiff, effective July 19, 1996. The plaintiff then informed BMG of his belief that SWV's "You're the One" infringed his copyright in

-4-

"You're the One (For Me)," and demanded royalties.  BMG turned a deaf ear to these overtures.

## II.

### Travel of the Case

After holding an initial scheduling conference, the district judge limited first-stage discovery to the issue of liability.  On February 15, 2001, the parties designated musicological experts who were expected to testify regarding liability.  They then exchanged expert reports.  See Fed. R. Civ. P. 26(a)(2).

In March of 2002, the district judge referred the case to a magistrate judge.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).  Over the course of the next year, the designated experts (Kenrick John for the plaintiff and Dr. Lawrence Ferrara for the defendants) were deposed.  On May 19, 2003, the parties, in the interest of narrowing the issues, submitted a stipulation of undisputed facts.  They also submitted as exhibits the plaintiff's certificate of copyright, along with certain sheet music and recordings.  In the latter category, the plaintiff proffered the sheet music for and a recording of the copyrighted composition "You're the One (For Me)" — sometimes referred to as the "short version" — as well as the sheet music for and a recording of an unregistered variation of it (the "long version").  The defendants

-5-

tendered copies of SWV's released version of "You're the One," published sheet music for that song, and a studio recording of it.

On July 3, 2003, the defendants moved for summary judgment on both counts of the complaint. See Fed. R. Civ. P. 56(b). The plaintiff objected. On March 15, 2004, the magistrate judge recommended the entry of summary judgment. Johnson v. Gordon, No. 99-10534, slip op. at 30 (D. Mass. Mar. 15, 2004) (unpublished).

In his report, the magistrate judge first determined that the uncopyrighted long version of the plaintiff's composition warranted copyright protection only to the extent that it incorporated elements derived from the copyrighted short version. Id. at 8-10. As a practical matter, this meant that the judge only needed to probe for similarities between the short version and the defendants' song. Id. at 10.

Having identified the works to be compared, the magistrate judge noted that the plaintiff's expert had outlined only three relevant points of ostensible similarity between the plaintiff's copyrighted short version and "You're the One." See id. at 16-17. Drilling down into the record, the magistrate judge rejected all three proposed comparisons, concluding that these elements were either dissimilar or too common to be treated as protectable expression. See id. at 20-21, 24-26. Thus, the copyright infringement claim failed.

With regard to the Lanham Act claim, the magistrate judge concluded that 15 U.S.C. § 1125(a) does not safeguard authors from false designation of the origin of their creative expressions. Id. at 28-30 (citing Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 37-38 (2003)). Consequently, the plaintiff could not prevail on the Lanham Act count. Id. at 30.

The plaintiff filed objections to the portion of the magistrate judge's report that recommended brevis disposition of the copyright infringement claim. See Fed. R. Civ. P. 72(b). On de novo review, the district judge adopted the findings and conclusions contained in the report and entered summary judgment for the defendants.[2] This timely appeal brought the matter to us.

## III.

### Analysis

The plaintiff contests only the district court's entry of summary judgment on the copyright infringement claim (the Lanham Act claim is out of the case and we will not comment further on it). In addressing his contentions, we limn the standard of review; describe a legal framework for adjudicating copyright infringement cases; consider whether identified similarities from the plaintiff's (uncopyrighted) long version of the song are

---

[2]For simplicity's sake, we do not hereinafter distinguish between the two judicial officers, but, rather, take an institutional view and refer to the determinations below as those of the district court. See, e.g., United States v. Maldonado, 356 F.3d 130, 134 n.1 (1st Cir. 2004).

-7-

entitled to protection; apply the law to the relevant undisputed facts in order to determine whether the plaintiff can clear the summary judgment hurdle; and, finally, sift through a mélange of miscellaneous arguments.

## A.

### Standard of Review

We afford de novo review to the district court's grant of summary judgment. Int'l Ass'n of Machinists, 103 F.3d at 200. The office of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) (quoting Fed. R. Civ. P. 56 advisory committee's note). In carrying out this function, we must review the entire record "in the light most hospitable to the party opposing summary judgment (here, the plaintiff), indulging all reasonable inferences in that party's favor." Euromodas, Inc. v. Zanella, Ltd., 368 F.3d 11, 17 (1st Cir. 2004). When the nonmovant bears the ultimate burden of proof on a given issue, he must make a factual showing, by means of competent and specific evidence, sufficient to establish the essential elements of his claim. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991); Garside, 895 F.2d at 48. Summary judgment is appropriate as long as "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In the precincts patrolled by Rule 56, these standards govern trial and appellate courts alike. As an appellate tribunal, however, we are "not bound by the lower court's rationale but may affirm the entry of judgment on any independent ground rooted in the record." Int'l Ass'n of Machinists, 103 F.3d at 200.

## B.

### The Legal Framework for Copyright Infringement

Copyright protection can subsist in an original musical work, including any accompanying words, fixed in any tangible medium of expression. 17 U.S.C. § 102(a). Subject to certain exceptions and limitations (not relevant here), the owner of a valid copyright in a musical work enjoys exclusive rights to reproduce all or any part of the copyrighted work, prepare a work derivative of it, distribute copies of it, perform or display it, and authorize others to exercise any of these rights. Id. § 106. One who violates any of these exclusive rights is an infringer of the copyright, and the legal or beneficial owner of the copyright (or of an exclusive right thereunder) may institute an action for infringement against him. Id. § 501.

To establish copyright infringement under the Copyright Act, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that

are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). The plaintiff bears the burden of proof as to both elements. Grubb v. KMS Patriots, L.P., 88 F.3d 1, 3, 5 (1st Cir. 1996).

In this appeal, the plaintiff's ownership of a valid copyright is not challenged, so the first element requires little elaboration. It suffices to say that the plaintiff must show that the work, viewed as a whole, is original, and that the applicable statutory requirements ancillary to the issuance of a valid copyright have been satisfied. Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 813 (1st Cir. 1995). A certificate of copyright constitutes prima facie evidence of ownership and originality of the work as a whole. Milene Music, Inc. v. Gotauco, 551 F. Supp. 1288, 1293 (D.R.I. 1982). Upon the plaintiff's production of such a certificate, the burden shifts to the defendant to demonstrate some infirmity in the claimed copyright. CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1513 (1st Cir. 1996).

The second of the Feist elements lies at the epicenter of this appeal. Although that element typically turns on an allegation of copying, it is important to note that copying does not invariably constitute copyright infringement. Feist, 499 U.S. at 361. Proof of wrongful copying is a two-step process. First, the plaintiff must show that copying actually occurred. This showing entails proof that, as a factual matter, the defendant

copied the plaintiff's copyrighted material.  <u>Segrets, Inc.</u> v. <u>Gillman Knitwear Co.</u>, 207 F.3d 56, 60 (1st Cir. 2000).  Second, the plaintiff must establish that the copying is actionable by "prov[ing] that the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works 'substantially similar.'"  <u>Id.</u>

      The plaintiff may satisfy his first-step burden by either direct or circumstantial evidence.  <u>Id.</u>  Plagiarists rarely work in the open and direct proof of actual copying is seldom available. To fill that void, the plaintiff may satisfy his obligation indirectly by adducing evidence that the alleged infringer enjoyed access to the copyrighted work and that a sufficient degree of similarity exists between the copyrighted work and the allegedly infringing work to give rise to an inference of actual copying. <u>See</u> <u>Lotus Dev.</u>, 49 F.3d at 813.  We have referred to that degree of similarity as "probative similarity."  <u>See</u>, <u>e.g.</u>, <u>id.</u> (admonishing that "probative similarity" requires that the two works are "so similar that the court may infer that there was factual copying"). This requirement of probative similarity is somewhat akin to, but different than, the requirement of substantial similarity that emerges at the second step in the progression.  <u>See</u> 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[A], at 13-33 (2004) [hereinafter Nimmer] ("Although the term 'substantial similarity' often is invoked as a proxy to prove copying as a

-11-

factual proposition, we have seen that the term 'probative similarity' is to be preferred in that context and the question of 'substantially similarity' arises analytically only thereafter.").

The substantial similarity requirement focuses holistically on the works in question and entails proof that the copying was so extensive that it rendered the works so similar that the later work represented a wrongful appropriation of expression. See Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 33 (1st Cir. 2001); Segrets, 207 F.3d at 60. Summary judgment on this issue is appropriate only when a rational factfinder, correctly applying the pertinent legal standards, would be compelled to conclude that no substantial similarity exists between the copyrighted work and the allegedly infringing work. O'Neill v. Dell Publ'g Co., 630 F.2d 685, 687 (1st Cir. 1980).

The "ordinary observer" test or, in a musical milieu, the "ordinary listener" test, supplies a framework for gauging substantial similarity. Under that metric, the defendant's work will be said to be substantially similar to the copyrighted work if an ordinary person of reasonable attentiveness would, upon listening to both, conclude that the defendant unlawfully appropriated the plaintiff's protectable expression. See Concrete Mach. Co. v. Classic Lawn Ornaments, 843 F.2d 600, 607 (1st Cir. 1988); Educ. Testing Servs. v. Katzman, 793 F.2d 533, 541 (3d Cir. 1986). Works can be substantially similar despite the presence of

disparities.  The key is whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the works'] aesthetic appeal as the same."  Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960).

The requirement of originality cuts across both of these similarity criteria.  The resemblances relied upon as a basis for finding probative similarity must refer to "constituent elements of the [copyrighted] work that are original."  Feist, 499 U.S. at 361.  Thus, in examining whether actual copying has occurred, a court must engage in dissection of the copyrighted work by separating its original, protected expressive elements from those aspects that are not copyrightable because they represent unprotected ideas or unoriginal expressions.  See Concrete Mach., 843 F.2d at 608.

To the extent that the copyrighted work and the allegedly infringing work exhibit probative similarities from which actual copying might be inferred, the ensuing analysis must address the question of substantial similarity (and, thus, determine whether wrongful appropriation occurred).  While a finding of substantial similarity vel non derives from an examination of the juxtaposed works as a whole, that examination must focus on "what aspects of the plaintiff's work are protectible under copyright laws and whether whatever copying took place appropriated those [protected] elements."  Matthews v. Freedman, 157 F.3d 25, 27 (1st Cir. 1998).

-13-

After all, "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected. Originality remains the sine qua non of copyright . . . ." Feist, 499 U.S. at 348.

This makes perfect sense: copyright law protects original expressions of ideas but it does not safeguard either the ideas themselves or banal expressions of them. See id. at 345-51. Thus, in assessing whether substantial similarity exists, an overall impression of similarity may not be enough. See Matthews, 157 F.3d at 27. If such an impression flows from similarities as to elements that are not themselves copyrightable, it will not satisfy the predicate requirement of originality necessary to ground a finding of actionable copying. See id.; see also Concrete Mach., 843 F.2d at 608-09.

## C.

### The Long and the Short of It

We turn now to the case at hand. As is often true in musical copyright actions, each side relied heavily on its own expert. Since the district court decided this case on summary judgment, we leave to one side the relative qualifications of the two experts and, consistent with our obligation to take the summary judgment record in the light most flattering to the nonmovant, Euromodas, 368 F.3d at 17, concentrate principally on the views articulated by the plaintiff's chosen expert, Kenrick John.

-14-

In the expert report submitted to buttress the claim of copyright infringement, Mr. John noted seven similarities between the disputed songs. Of these, four relied on a comparison between his transcriptions of the unregistered long version of the plaintiff's song and SWV's recording of the defendants' song. While the defendants do not contest the validity of the plaintiff's copyright registration for the short version (at least at the summary judgment stage), they asseverate that the plaintiff cannot, as a matter of law, stretch the carapace of that ownership to garner copyright protection for elements unique to the (unregistered) long version.

The plaintiff demurs. Relying on <u>G. Ricordi & Co.</u> v. <u>Paramount Pictures</u>, 189 F.2d 469 (2d Cir. 1951), he contends that the long version, although unregistered, nevertheless enjoys limited copyright protection because significant portions of it are derived from the registered short version. That limited protection, however, does not extend as far as the plaintiff suggests.

Since the Copyright Act of 1976 took effect, registration is no longer a statutory prerequisite to copyright protection. <u>See</u> 17 U.S.C. § 408(a). Withal, registration is a precondition for bringing a copyright infringement suit. <u>See</u> <u>id.</u> § 411(a). It is also a condition precedent for obtaining certain remedies, such as statutory damages and attorneys' fees. <u>See</u> <u>id.</u> § 412.

Ricordi was a pre-1976 case, but its central holding survives the enactment of the Copyright Act of 1976: a valid, enforceable copyright on an underlying work extends to protect those elements of a new work that are derived directly from the underlying work. See Ricordi, 189 F.2d at 472.

In Ricordi, the court determined that upon the expiration of the copyright of a play, the owner of a copyright for an underlying novel was entitled to continuing copyright protection of those materials in the play that derived directly from the novel, but not of any elements idiosyncratic to the play. See id. Citing Ricordi, we have held that under the current permissive-registration regime, a plaintiff may bring a suit for unauthorized distribution of an unregistered derivative work as long as the suit is based on elements "borrowed" from a registered underlying work and not on elements original to the derivative work. See Gamma Audio & Video, Inc. v. Ean-Chea, 11 F.3d 1106, 1112 (1st Cir. 1993). Put another way, elements distinct to an unregistered work cannot draw protection from a registered work even though the latter may contain the seminal idea that inspired both works. See 2 Nimmer § 7.16[B][2][b].

As applied here, the Ricordi doctrine extends copyright protection to those elements of the plaintiff's long version that are derived directly from the registered short version, but not to those elements contained exclusively in the unregistered long

-16-

version.  The four elements identified by Mr. John and listed in points three through six of his report appear solely in the long version.  The plaintiff does not offer any argument that the elements appearing solely in the long version are somehow still derived from the elements appearing in both versions.[3]  For that reason, those new elements cannot form the basis for a charge of unlawful copying and, accordingly, drop out of the infringement equation.

**D.**

**Copyright Infringement Analysis**

In this case, there is no dispute about the plaintiff's ownership of a valid copyright for the short version of his song (at least at the summary judgment stage).  Thus, we jump directly to the question of whether the plaintiff has made a factual showing sufficient to establish a genuine issue as to the two elements underpinning Feist's copying requirement:  actual copying and actionable copying. Because the plaintiff has not proffered direct evidence of actual copying, he must support that element by indirect evidence demonstrating access and probative similarity. The determination made in Part II(C) renders his burden of establishing both probative similarity (for purposes of supporting

---

[3]To be sure, the plaintiff does argue that the district court erred by ruling that the long version is "not derivative" of the short version, but that argument mischaracterizes the district court's ukase.

-17-

an inference of actual copying) and substantial similarity (for purposes of the actionable copying element) dependent on three purported similarities (points one, two, and seven in Mr. John's report) and a free-floating assertion of lyrical similarity. We undertake a point-by-point analysis.

   1.  **Point One**.  Mr. John's report took the position that the melody supporting the lyric "You're the One for Me" in bars 1 and 2 of the defendants' ballad is a melodic variation of the melody underlying the same lyric in bars 16 and 17 of the plaintiff's short version.  The report singles out two known compositional methodologies — "inversion" and "retrograde" — that a composer might use to vary a particular melody and asserts that the melody in bars 1 and 2 of the defendants' song represents those "two very common variations" of the plaintiff's melody for bars 16 and 17 of the short version.[4]

   Here, as elsewhere, the witness's bald conclusion must be read in light of his explanatory testimony.  See Euromodas, 368 F.3d at 19 (viewing deponent's statements "as a whole" for purposes of summary judgment).  During his deposition, Mr. John revealed that it was necessary to apply a series of other alterations to the

---

   [4]Relying on a standard musicological dictionary, Mr. John defines melodic inversion as "a procedure in which each ascending interval of an entire melody is changed into its opposite descending interval and vice versa."  He defines retrograde as "a term indicating reverse or backward motion, e.g., beginning with the last note of the melody and ending with the first."

plaintiff's melody, beyond the mechanisms of inversion and retrograde, in order to arrive at a melody that bore any resemblance to bars 1 and 2 of the defendants' song. He also admitted that even in this contrived format, the plaintiff's two-bar melody still did not yield a close match to the defendants' two-bar melody.

A look at the techniques employed by Mr. John in his herculean effort to assimilate the two melodies makes manifest the absence of any meaningful degree of similarity. The witness first transposed bars 16 and 17 of the plaintiff's composition into D flat (the key of the defendants' song).[5] He then altered the melody by raising it a perfect fifth (moving each note seven half-steps up the musical scale). At that point, he applied the known formula for inversion, but altered the rhythm to match that of the defendants' song. And, finally, he added an A flat note to the altered, inverted version of the plaintiff's bars 16 and 17. These machinations yielded two bars with the following notes and pitches:

A flat, A flat, G, F, C tied, D flat

5, 5, 4, 3, 7, 1

---

[5]Courts sometimes have recognized transposition of one song to the key of another as a valid tool in effecting comparisons. See, e.g., Nom Music, Inc. v. Kaslin, 227 F. Supp. 922, 927 (S.D.N.Y. 1964). The case at bar does not involve a straight transposition, but, rather, the use of transposition as one of several steps in a long, drawn-out series. The totality finds no support in the case law as a basis for deeming two compositions similar.

Mr. John likened this finessed result to bars 1 and 2 of the defendants' song, which used the following notes and pitches:

A flat, A flat, G, F, E flat tied, D flat

5, 5, 4, 3, 2, 1

This outcome does little to advance the plaintiff's cause. Mr. John acknowledged that, even after undergoing the manipulations described above, bars 16 and 17 of the plaintiff's song still differed from the bars 1 and 2 of the defendants' song with respect to the fifth note and the melodic contour (the arrangement of pitches). As to the latter, he conceded that the plaintiff's altered two-bar melody descends from 5 to 3, rises up to 7, and then descends back to 3, whereas the defendants' two-bar melody continually descends from 5 to 1. He also conceded that the melodic contour employed by the defendants — the descending scale of 5, 4, 3, 2, 1 — was a "very common" melodic pattern that appears in such hoary songs as "Row, Row, Row Your Boat" (specifically, the melody that accompanies the lyric "life is but a dream").

In comparing the retrograde variation of the plaintiff's bars 16 and 17 to defendants' bars 1 and 2, Mr. John again altered the rhythm to match the defendants' song and added an A flat note. Yet, even with the benefit of these emendations, differences persisted between the retrograde version of the defendant's two-bar melody and its proposed counterpart. For example, the third notes of the sequences do not coincide.

-20-

Bare conclusions seldom are entitled to weight in the summary judgment calculus. Grant's Dairy—Maine, LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 23 (1st Cir. 2000). Here, Mr. John's deposition testimony totally undermined his stated conclusion that the defendants' two-bar melody was a melodic variation derived from the plaintiff's song. Taking his testimony at face value, the defendants' bars 1 and 2 do not represent either a simple inversion or retrograde of the plaintiff's bars 16 and 17, but, rather, a complicated mélange of techniques. Those two-bar segments are not identical twins or even sisters under the skin; their relationship is something more akin to that of second cousins, twice removed.

Relationship does not necessarily breed similarity, and the plaintiff has offered no support for the proposition that musically related but distinct melodic fragments may give rise to an inference of actual copying. There is no facial similarity between the melodies of the relevant segments as they are written. The most that can be said is that the two segments bear some relation to one another within a finite world of melodies. Given the limited musical vocabulary available to composers, this is far from enough to support an inference of actual copying. See Gaste v. Kaiserman, 863 F.2d 1061, 1068 (2d Cir. 1988) (noting that, in assessing evidence of actual copying, a court must be "mindful of the limited number of notes and chords available to composers and

-21-

the resulting fact that common themes frequently reappear in various compositions, especially in popular music"); <u>Selle</u> v. <u>Gibb</u>, 741 F.2d 896, 905 (7th Cir. 1984) (finding that "in a field such as that of popular music in which all songs are relatively short and tend to build on or repeat a basic theme," testimony concerning the relative complexity or uniqueness of two compositions "seem[s] to be particularly necessary" to establish the inference of copying).

We add, moreover, that the occurrence of five of the six pitches of the defendants' melody in the public domain reinforces the view that whatever resemblance might exist between the plaintiff's and the defendants' two-bar melodies is legally insignificant. The fact that the sequence of the latter five pitches of the defendants' 5, 5, 4, 3, 2, 1 melodic contour is common and readily available in the public domain — the "Row, Row, Row Your Boat" example is persuasive on this point — argues convincingly against any inference that the defendants relied upon the plaintiff's work to generate it. <u>See</u>, <u>e.g.</u>, <u>Gaste</u>, 863 F.2d at 1068-69; <u>Granite Music Corp.</u> v. <u>United Artists Corp.</u>, 532 F.2d 718, 720 (9th Cir. 1976); <u>Arnstein</u> v. <u>Edward B. Marks Music Corp.</u>, 82 F.2d 275, 277 (2d Cir. 1936); <u>see</u> <u>also</u> II Paul Goldstein, Copyright § 8.3.1, at 8:48 (2d ed. 2005 Supp.) (explaining that the

-22-

availability of the allegedly infringing musical segment in the public domain rebuts the inference of copying).[6]

The upshot is that we, like the district court, find this so-called "similarity" too attenuated to be deemed probative for purposes of supporting an evidentiary inference of actual copying. Thus, point one does nothing to fuel the plaintiff's appeal. See Lotus Dev., 49 F.3d at 813 (finding of probative similarity requires that copyrighted work and allegedly infringing work are so similar that factual copying can be inferred).

2. **Point Two**. In his report, Mr. John observed that the harmony of bars 1 and 2 of the defendants' song is the same harmony that accompanies bars 17 and 18 of the plaintiff's short version. Once again, his deposition testimony sheds light on the conclusory statement contained in his report. In that testimony, Mr. John identified this similarity as a III, II harmonic progression — a type of progression from a mediant chord to a supertonic chord,

---

[6]If more were needed — and we do not think that it is — it is undisputed that the two musical segments, as written, do not sound alike and would not sound alike to an ordinary listener (indeed, Mr. John admitted as much). Thus, putting aside the bizarre peregrinations that are required to get from point A to point B in Mr. John's similarity analysis, the only conclusion available from the fact that the defendants' melody does not bear any audible likeness to its distant relation is that this proposed resemblance contributes nothing to a finding of substantial similarity between the two works. See Repp v. Webber, 132 F.3d 882, 889 (2d Cir. 1997) (explaining that to prove substantial similarity in a case charging musical plagiarism, the plaintiff is constrained to show that the defendant appropriated musical elements detectable by the ear of the lay listener); see also Concrete Mach., 843 F.2d at 607.

commonly inserted in popular and jazz music to "create a sense of instability . . . with the hope of resolving at some point." Mr. John agreed that this progression can be found in thousands of songs.

The plaintiff has not presented any evidence contradicting his own expert's assessment of the ubiquity of the III, II harmonic progression. Virtually by definition, expressions that are common are also unoriginal. See, e.g., Yankee Candle, 259 F.3d at 35; see also Feist, 499 U.S. at 345 (noting that although originality does not require novelty, it does demand that an expression exhibit "at least some minimal degree of creativity"). So it is here: this harmonic progression, which is a stereotypical building block of musical composition, lacks originality. Accordingly, it is unprotectable. See Matthews, 157 F.3d at 27 (noting that unoriginal expressions are not copyrightable); see also Tisi v. Patrick, 97 F. Supp. 2d 539, 544 (S.D.N.Y. 2000) (finding the I, IV harmonic progression not protectable due to its commonality); Intersong-USA v. CBS, Inc., 757 F. Supp. 274, 282 (S.D.N.Y. 1991) (finding a certain harmonic progression unprotectable because it appears in many songs); see generally N. Music Corp. v. King Record Distrib. Co., 105 F. Supp. 393, 400 (S.D.N.Y. 1952) (observing that harmony "is achieved according to rules which have been known for many years" and that "[b]eing in the public domain for so long," it cannot itself be the subject of

copyright); 1 Nimmer § 2.05[D], at 2-57, 2-58 & n.39 (explaining that harmony is seldom protectable because in most cases, it is simply driven by the melody and therefore is unoriginal).

The plaintiff makes a desultory effort to parry this thrust by asserting that although the progression itself is common, it might be considered original depending on the manner of its exploitation. This assertion lacks force. While there may be some circumstances in which a common harmonic progression could be exploited in an original (and, thus, protectable) manner, see Tempo Music, Inc. v. Famous Music Corp., 838 F. Supp. 162, 168-69 (S.D.N.Y. 1993) (recognizing this possibility); cf. Yankee Candle, 259 F.3d at 34 (recognizing that a host of unprotectable elements expressed in a unique way might qualify for copyright protection), the songs at issue here use the III, II harmony in two completely different ways, neither of which is unique. In the short version of the plaintiff's tune, the progression resolves, ultimately coming to a resting point, in Mr. John's words, for the purpose of giving the listener "a sense of comfort." The defendants' song employs an unresolved III, II harmonic progression, a form that Mr. John stated was adopted to "create a forward potential" so that the "listener is sort of always on edge."[7] Mr. John testified that both methods of expressing a III, II harmonic progression —

---

[7]This is not merely a technical distinction. Even the plaintiff's expert concedes that the resolved and unresolved III, II progressions sound different to the ordinary listener.

resolved and unresolved — are employed in thousands of songs. Thus, even if the manner of exploiting a harmonic progression can be independently protectable, the plaintiff's use of a resolved III, II progression is not probative of actual copying because that progression is neither original nor reproduced in the defendants' song.

        **3. <u>Point Seven</u>**. In his report, Mr. John maintained that the melody of bars 17-20 of the defendants' song resembled bars 41-44 of the plaintiff's short version. Even then, he dubbed this resemblance a "coincident." During Mr. John's deposition, it became apparent that the three-note repetition of the E flat that appeared in these segments (albeit in different places within each song's structure) was, indeed, simply a coincidence. Aside from that three-note segment, the notes and the pitches in the two four-bar sets were wholly dissimilar.

        It would serve no useful purpose to flog this moribund mare. Mr. John's deposition testimony made it transparently clear that his initial characterization of this phenomenon as a similarity was, at best, an exaggeration. There is nothing in this point that lends support to an inference of actual copying. <u>See</u> <u>Cottrill</u> v. <u>Spears</u>, No. CIV. A. 02-3646, 2003 WL 21223846, at *9 (E.D.Pa. May 22, 2003) (finding that the repetition of a particular note three times in the verses of the plaintiffs' and the

defendants' songs was trivial and did not constitute striking similarity for purposes of showing actual copying).

**4.    The Lyric "You're the One for Me."**  In his unrelenting effort to establish actionable copying, the plaintiff clings to the one undeniable similarity between the two songs:  the use of the phrase "You're the One for Me" in the title and lyrics of each song.  While this usage is similar, it is also common.  The record reflects, as does the United States Copyright Office's Registered Works Database, that hundreds of composers have registered songs capturing the same sentiment in the same verbiage.  It is thus readily apparent that this lyric is too trite to warrant copyright protection.  See CMM Cable Rep, 97 F.3d at 1519 (noting that clichéd language and expressions that convey ideas generally expressed in a limited number of stereotypical ways are outside the scope of copyright protection).

**5. Da Capo.**  To recapitulate, we have examined the three points of alleged musical similarity and the common lyric.  Based on that appraisal, we conclude, without serious question, that the plaintiff has failed to identify a degree of similarity sufficient to give rise to an inference that actual copying occurred.  Consequently, the plaintiff cannot, as a matter of law, establish the actual copying element requisite to his copyright infringement claim.

## E.

## Miscellaneous Assignments of Error

The plaintiff makes three last-ditch arguments in an effort to discredit the district court's decision. None of them warrant extended discussion.

1. **Hyper-dissection**. The plaintiff, in effect, accuses the district court of overlooking the forest for the trees: he charges that the court did not see the overall similarity between his song and the defendants' song because it analyzed fragments of the two and ignored similarities that were recognizable only within a wider context.

This is a peculiar argument because dissection of a work to determine whether its constituent elements are original is recognized as a valid investigative technique in copyright cases. See id. at 1514 (calling dissection "a key tenet of copyright law"). In all events, the district court properly applied the dissection technique here: it analyzed the alleged similarities as they were presented by the plaintiff's expert, without further fragmentation, and took them in the light most favorable to the plaintiff. No more was exigible.

At the possible expense of carting coal to Newcastle, we add that this is not a case in which a court failed to link allegedly infringing components together and inspect each work as a coherent whole. The problem here is that the components

-28-

themselves are so dissimilar that they cannot sensibly be agglomerated in such a way as to conjure up an overall (legally significant) resemblance. See Aliotti v. R. Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987) (explaining that "[a]lthough even unprotectable material should be considered when determining if there is substantial similarity of expression, no substantial similarity may be found . . . where analytic dissection demonstrates that all similarities in expression arise from the use of common ideas" (internal citation omitted)).

   **2.  Sampling**.  Relying on his own expert's deposition testimony that he heard "sampling" in the defendants' song, the plaintiff posits that it was error for the district court not to account for this sampling in its copyright infringement analysis. We do not agree.

   "Sampling" is a term used to describe "the incorporation of a short segment of a musical recording into a new musical recording."  Newton v. Diamond, 388 F.3d 1189, 1190 (9th Cir. 2004).  In this case, the district court declined to consider Mr. John's testimony anent sampling because the witness admitted that he lacked a proper foundation on which to make the assessment.  For example, he had not performed a technical analysis of the type used by musicologists to detect samples in sound recordings; he had not noted the existence of sampling in his report; and he could not

point to the sheet music corresponding to the relevant sound recordings to indicate where sampling might have occurred.

A nisi prius court need not give weight to opinion evidence that is unsupported by an adequate foundation. See Coyne v. Taber Partners I, 53 F.3d 454, 461 n.7 (1st Cir. 1995) (noting that a district court has discretion to exclude from its summary judgment analysis any expert testimony that rests on a speculative foundation); Quinones-Pacheco v. Am. Airlines, Inc., 979 F.2d 1, 6 (1st Cir. 1992) (explaining that trial courts enjoy wide latitude with respect to the exclusion of expert testimony for lack of foundation). Given the porous nature of the foundation that undergirded Mr. John's casual references to sampling, the district court's refusal to credit those references was amply justified. To hold otherwise would be tantamount to requiring trial courts to indulge in speculation and surmise.[8] See In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003) (explaining that a court is not bound to credit "bald assertions, unsupportable conclusions, and opprobrious epithets woven into the fabric of the

_____

[8]We note, moreover, that the plaintiff never obtained a valid copyright for the sound recording of the short version of his song. Consequently, it is doubtful that he is entitled to any protection against sampling. See Newton v. Diamond, 204 F. Supp. 2d 1244, 1248-49 (C.D.Cal. 2002) (explaining that "[s]ound recordings and their underlying musical compositions are separate works with their own distinct copyrights"), aff'd, 388 F.3d 1189 (9th Cir. 2004); see also 17 U.S.C. § 102(a)(2), (7).

complaint" (internal quotation marks omitted)); <u>Medina-Munoz</u> v.
<u>R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990) (similar).

      **3.** **<u>Failure to Listen</u>**.  The plaintiff takes umbrage at
the fact that neither the district judge nor the magistrate judge
explicitly stated that he had listened to the two songs.  This
argument is hopeless.  The plaintiff has cited no authority for the
proposition that the court was required to listen to the music and,
at any rate, there is no evidence that the court failed to do so.

**<u>IV.</u>**

**Finale**

     We need go no further.  Discerning no similarities upon
which the plaintiff might build a plausible inference of actual
copying, we conclude that his copyright infringement claim fails as
a matter of law.  It follows that the district court, which granted
summary judgment for the defendants, called the proper tune.

**<u>Affirmed</u>**.