**John F. DUNN, Plaintiff**

v.

**Dan BROWN, et al., Defendants.**

**C.A. No. 06–30134–MAP.**

United States District Court,
D. Massachusetts.

Sept. 28, 2007.

Gary A. Ensor, South Hadley, MA, for Plaintiff.

Gordon P. Katz, Holland & Knight, LLP, Boston, MA, Elizabeth A. McNamara, James E. Rosenfeld, Linda Steinman, Davis Wright Tremaine, LLP, New York City, for Defendants.

MEMORANDUM AND ORDER RE-GARDING DEFENDANTS' MO-TIONS TO DISMISS OR FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO STRIKE

(Dkt. Nos. 13, 17, & 26)

PONSOR, District Judge.

## I. INTRODUCTION

Plaintiff, John F. Dunn, has brought this action claiming that the novel *The DaVinci Code* copied constituent elements of his book, *The Vatican Boys,* in violation of the federal copyright statute. The complaint names as defendants *The DaVinci Code's* author, Dan Brown; his publisher, Random House, Inc.; and four corporations associated with the creation and distribution of the movie version of *The DaVinci Code:* Columbia Pictures Industries, Inc., Sony Pictures Entertainment, Inc., Sony Pictures Releasing Corp., and Imagine Films Entertainment, LLC. Although the complaint offers a common law theory of unjust enrichment and claims an entitlement to an accounting, the parties agree that the complaint rises or falls on the federal statutory copyright claim.

As will be seen below, the analysis of a possible copyright violation turns on the question whether The *DaVinci Code* would be recognized as "substantially similar" to *The Vatican Boys* by an ordinary reader. *Johnson v. Gordon,* 409 F.3d 12, 18 (1st Cir.2005). Having now read both novels carefully, the court is obliged to conclude, with the greatest possible respect to Plaintiff, that no ordinary reader could conceivably find any substantial similarity between the two books, let alone encounter an overlap sufficiently extensive that it "rendered the works so similar that the later work represented a wrongful appropriation of expression." *Id.* Based upon

this, the court will allow Defendants' motions for summary judgment.[1] Plaintiff's motion to strike will be denied.

## II. BACKGROUND

According to the notes contained in the volume of The *Vatican Boys* supplied to the court, author John F. Dunn has previously written two books, as well as a screenplay. The *Vatican Boys* carries a copyright date of 1997 and for further information the reader is referred to Flats Press, LLP of South Hadley, Massachusetts.

Author Dan Brown has written four novels, including The *DaVinci Code*, which was first published in March 2003 by Doubleday, a division of Defendant Random House, to great success. This lawsuit was filed on August 16, 2006. Prior to the initiation of any discovery, Defendants filed their motions to dismiss or for summary judgment.

The *Vatican Boys* centers on a multi-million dollar banking fraud, orchestrated primarily by the Catholic organization, Opus Dei. The lead female character, Catherine Turrell, is a recovering drug addict who was at the center of the fraud and who has double crossed Opus Dei. In the background of the fraud plot is a search for a sacred cloth, whose discovery and joinder with a second cloth will lead to the Second Coming. It is fair to say that the tenor of the The *Vatican Boys* is supportive of orthodox Catholicism, in opposition to those who would use the church for corrupt or selfish purposes.

The *DaVinci Code* is deeply skeptical of orthodox Catholicism, portraying the existing church as concealing the fact that Jesus and Mary Magdalene were married and bore children whose descendants live to the present day. The plot of the book follows the unraveling of a series of clues by the novel's central male character, a professor named Robert Langdon, leading to the revelation of this supposed historical reality and to the fact that the book's central female character, Sophie Neveu (who assists and from time to time rescues Langdon) is a direct descendent of Christ. Opus Dei does appear in the novel, but as a dupe of the villain Leigh Teabing, who is willing to go to any length, including multiple murders, to unmask the Catholic church's "smear campaign ... to defame Mary Magdalene in order to cover up her dangerous secret—her role as the Holy Grail." Dan Brown, The DaVinci Code 244 (2003).

## III. DISCUSSION

Before addressing the central issue of whether the two books could be viewed as substantially similar, the court should make two points.

First, neither discovery nor expert evidence is needed, or even appropriate, in order to rule on Defendants' motions. With regard to possible discovery, Defendants have accepted, for purposes of their motions, Plaintiff's assertions with regard to the only relevant potential factual disputes alive in the case: that Defendant Brown had access to The *Vatican Boys* in writing The *DaVinci Code* and that, for purposes of copyright analysis, the two works are "probatively similar."[2] Discov-

1. Defendants have styled their filings as motions to dismiss or alternatively for summary judgment. Since the court has considered matters outside the pleadings, *i.e.* the books themselves, it is simplest to address these motions pursuant to Fed.R.Civ.P. 56.

2. In fact, Defendant Brown denies ever seeing The *Vatican Boys* before or during the writing of The *DaVinci Code* and rejects any claim that the two books are in any way probatively similar. In order to avoid any factual dispute and simplify the issues, however, Defendants

ery therefore would generate no facts material to the issues before the court.

■ With regard to expert testimony, it is well established that consideration of such evidence is neither necessary nor proper to permit application of the "ordinary observer" test. *O'Neill v. Dell Pub. Co., Inc.*, 630 F.2d 685, 690 (1st Cir.1980). No less an authority than Judge Learned Hand has observed that expert opinion in this arena "cumbers the case and tends to confusion, for the more the court is led into the intricacies of dramatic craftsmanship, the less likely it is to stand upon the firmer, if more naive, ground of its considered impressions upon its own perusal." *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 123 (2d Cir.1930), *cited with approval in O'Neill*, 630 F.2d at 690.

Second, it is noteworthy that the central argument offered by Plaintiff in support of his copyright claim—that the two works have substantial *thematic and structural* similarity—has little or no support in the law as a basis for a copyright claim. Plaintiff offers no allegation of of verbatim, or near verbatim, copying; rather, Plaintiff asserts that the basic outlines of the two books are sufficiently similar that the latter book must, or at least may, be seen as violating Plaintiff's copyright. No prior case recognizing a theory of copyright infringement based on the sort of thematic or structural similarity posited by Plaintiff has been offered in his memorandum opposing summary judgment, nor has the court found one.

■ Establishing copyright infringement requires proof of two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Johnson v. Gordon*, 409 F.3d at 17 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,

361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)). As to the first element, it is undisputed that Plaintiff owns a valid copyright for *The Vatican Boys*.

■ Proof of the second element of a copyright claim, wrongful copying, follows a two-step process. First, Plaintiff must offer proof that, "as a factual matter, the defendant copied the plaintiff's copyrighted material." *Johnson v. Gordon* 409 F.3d at 18 (citation omitted). Next, a plaintiff must demonstrate that "the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works substantially similar." *Id.* (citation omitted).

Although Defendants deny any copying, they pass over the first step of the analysis of the second element and rest their motions on the argument that the two works lack any substantial similarity. The First Circuit has made clear that, at this second step, a plaintiff must show that the "original, protected expressive elements" in his work reappear in the later work in a manner that is so substantially similar that the later work represents "a wrongful appropriation of expression." *Id.*

In approaching this question a court must keep several principles in mind.

■ First, ideas cannot be copyrighted. *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 33 (1st Cir.2001). Thus, an author " 'can claim to own only an original manner of expressing ideas, not the ideas themselves.' " *Id.* (quoting *Harper & Row, Pubs., Inc., v. Nation Enters.*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)).

The point is that the underlying idea (e.g., the travails of two star-crossed lovers), even if original, cannot be removed from the public realm; but its

have conceded these points purely for the sake of argument.

expression in the form of a play script (such as William Shakespeare's *Romeo and Juliet*) can be protected.

*Matthews v. Freedman*, 157 F.3d 25, 27 (1st Cir.1998).

 In addition, it is well settled that "facts" cannot be copyrighted. As the Second Circuit as noted, "the scope of copyright in historical accounts is narrow indeed, embracing no more than the author's original expression of particular facts and theories already in the public domain." *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 974 (2d Cir.1980), *cert. denied*, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). This limitation has particular relevance to the facts of this case, given both books' reliance on church history, on the existence of an actual entity (Opus Dei), and on certain contemporary locales.

 Finally, the doctrine of "scenes a faire" denies copyright protection to unoriginal elements of recurring stock scenes. *Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1522 n. 25 (1st Cir. 1996). "For example, the choice of writing about vampires leads to treating killings, macabre settings, and choices between good and evil." 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03 [B] [4], at 13–78.7 (2003).

 Applying these considerations, the court after reading the two books must conclude that—beyond the fact that both novels are thrillers with religious overtones—no substantial similarity exists between *The Vatican Boys* and *The DaVinci Code*. A review of just a few of the most prominent differences between the two books makes this clear.

1. Brown's hero, Stephen Langdon, is a Harvard professor, baffled and overwhelmed at times, but likeable and trustworthy. In the end, the central female character begins to fall in love with him, and the two agree to meet after the action in the novel concludes. Dunn's central male character, Stephen Hathaway, is a greedy, macho rat. At the end of *The Vatican Boys* the central female character wisely cuts off contact with him.

2. The central female character of Dunn's novel, Catherine Turrell, is a con artist and recovering drug addict, saved during the course of the novel by religion. The central female character in *The DaVinci Code*, Sophie Neveu, is a distant offspring of Jesus Christ, a trained cryptographer, a resourceful and reliable sidekick for Langdon, and the granddaughter of the curator of the Louvre. Plaintiff's suggestion that these two characters are in any way similar is absurd.

3. The villain in *The DaVinci Code*, Leigh Teabing, a cultivated and calculating killer, has no parallel in The *Vatican Boys*. Plaintiff's attempt to suggest that his character, Father Karl Rovarik, a Benedictine priest who embodies goodness and holiness in *The Vatican Boys*, was somehow copied by Brown to create Teabing is patently ridiculous.

4. Plaintiff's attempt to draw parallels between his character, Jeremy Willoughby, a "steely-eyed Yankee" mercenary totally uninterested in religion, and Brown's fanatically religious, homicidal albino monk Silas is utterly lacking in support from the texts.

5. The timing and setting of the two novels are entirely distinct. *The DaVinci Code* takes place over a few days in Paris, London, and Scotland. *The Vatican Boys* extends from 1964 to 1997, with the bulk of the action taking place over several months in 1996, sometimes in Paris and London, but also in Vermont, Ontario, Jerusalem, Madrid, Toronto, Martha's Vineyard, Monte Carlo, and Tibet.

6. The DaVinci Code relies on a series of clues and puzzles to draw the reader along and allow the plot to unfold. The Vatican Boys uses no such device and follows a traditional thriller format.

7. As noted, *The Vatican Boys* expresses an allegiance, both implicit and explicit, to traditional Catholic doctrine, whereas the central tenet of *The Davinci Code* is precisely the opposite.

Much more could be said along these lines, but no more is necessary. Far from being similar, the characters, plot devices, settings, pacing, tone, and theme of the two books are entirely different. Even if a theory of copyright infringement could be based on a similarity of general thematic or structural elements, which is doubtful, no such similarity exists here. One could as easily claim (if the authors had lived contemporaneously) that Hemingway's *Old Man and the Sea* violated the copyright of Melville's *Moby Dick* (aging seaman encounters large fish), Hardy's *Tess of the d'Urbervilles* violated the copyright of Tolstoy's *Anna Karenina* (woman succumbs to passion, suffers consequences), or Joyce's *Portrait of the Artist as a Young Man* violated the copyright of Dickens' *David Copperfield* (troubled childhood leads to writing career).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss or for Summary Judgment (Dkt. Nos. 13 and 17) are hereby ALLOWED. Plaintiff's Motion to Strike (Dkt. No. 26) is hereby DENIED. The clerk is ordered to enter judgment for Defendants. This case may now be closed.

It is So Ordered.