# United States Court of Appeals

## For the First Circuit

No. 07-2786

COQUICO, INC.,

Plaintiff, Appellee,

v.

ÁNGEL EDGARDO RODRÍGUEZ-MIRANDA AND IDENTIKO, INC.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., U.S. District Judge]

Before

Torruella, Selya and Leval,[*] Circuit Judges.

Samuel F. Pamias-Portalatín, with whom Carla Ferrari-Lugo was on brief, for appellants.
Marie Elsie López-Adames, with whom González-López & López-Adames was on brief, for appellee.

April 6, 2009

---

[*]Of the Second Circuit, sitting by designation.

**SELYA**, <u>Circuit Judge</u>.  A famous fairy tale, of ancient vintage, tells of an ugly frog who, when befriended by a beautiful damsel, turns into a handsome prince, marries his rescuer, and (presumably) lives happily ever after.  <u>See</u> Jacob Grimm & Wilhelm Grimm, <u>The Frog-King</u>, <u>reprinted</u> <u>in</u> 17 <u>The Harvard Classics</u> 47 (Charles W. Eliot ed., P.F. Collier & Son 1909).  The coquí is a tree frog indigenous to Puerto Rico.  Plaintiff-appellee Coquico, Inc. has not yet managed to turn the coquí into an imperial presence.  It has, however, fashioned a popular stuffed-animal rendering of the coquí and, thus, turned the frog into dollars.

Coquico secured a copyright on its stuffed animal to protect this amphibian revenue source.  When the defendants, Ángel Edgardo Rodríguez-Miranda (Rodríguez) and Identiko, Inc., began selling a competing coquí, Coquico sued for, among other things, copyright infringement.  The district court preliminarily enjoined the defendants from infringing Coquico's copyright.

The defendants appeal.  Concluding, as we do, that the district court did not abuse its discretion in granting the preliminary injunction, we affirm.

## I.  BACKGROUND

We rehearse the factual and procedural antecedents of this appeal, "credit[ing] the undisputed facts presented below and adopt[ing] the district court's findings as to controverted matters to the extent they are supported by the record and not clearly

-2-

erroneous." United Elec., Radio & Mach. Workers v. 163 Pleasant St., 960 F.2d 1080, 1083 (1st Cir. 1992).

Coquico manufactures and distributes plush-toy depictions of animals. Pertinently, it produces a line of plush toys portraying the coquí común, a small brown tree frog much beloved in Puerto Rico. This litigation concerns Coquico's standard plush-toy coquí, registered as a work of visual art with the United States Copyright Office on June 22, 2001, under the appellation "Común by Coquico."

In designing Común, Coquico hired a scientist, a photographer, and a recording engineer with an eye toward reproducing key features of the coquí's appearance and avoiding zoological anomaly. This effort was successful to a degree and Común displays notable features of the anuran on which it is modeled. But Común nonetheless possesses several features that do not have their genesis in the frog's physiognomy. These features include a brass button, a bonita bandera (the Puerto Rican flag) stitched onto the frog's underbelly, and an informational hang tag.[1]

Rodríguez worked for Coquico for four years, beginning in 2001. Sometime in 2002 Coquico gave him access to sensitive

_____

[1] The hang tag is inscribed and separately registered with the Copyright Office. Because this appeal implicates only the principal copyright obtained by Coquico, we do not refer further to this accessory copyright.

information anent its design criteria, manufacturing processes, and profit margins. In return, Rodríguez signed a non-disclosure/non-competition agreement.

That same year, Rodríguez founded Identiko, with the evident purpose of designing products that would be identified with political candidates and campaigns, social movements, and the like. But in February of 2006 (shortly after leaving Coquico), Rodríguez contacted a manufacturer in China to explore the feasibility of producing plush toys. Within months, Identiko began to distribute plush-toy coquíes under the label "Wild Encantos." Its standard plush-toy incarnation of the coquí strongly resembles Común.

On May 18, 2007, Coquico brought suit alleging, among other causes of action, that the defendants had infringed its copyright. Following an evidentiary hearing, the district court entered an order preliminarily enjoining Rodríguez and Identiko from continuing to market the Encantos coquí or otherwise infringing Coquico's copyright in plush-toy coquíes.[2] See Coquico, Inc. v. Rodríguez-Miranda, Civ. No. 07-1432, 2007 WL 3034259, at *6 (D.P.R. Oct. 15, 2007). This interlocutory appeal ensued. We have jurisdiction under 28 U.S.C. § 1292(a)(1).

---

[2] Coquico's complaint originally named additional defendants. The district court granted judgment in their favor on August 27, 2007, and Rodríguez and Identiko are the only remaining defendants.

**II. ANALYSIS**

On appeal, the defendants insist that the Encantos coquí does not copy any original elements of Común and, thus, that Coquico is unlikely to succeed on its claim of copyright infringement. In the pages that follow, we lay the necessary legal foundation and then address the merits of this controversy.

**A.**

The propriety of preliminary injunctive relief depends on an amalgam of four factors: (i) the likelihood that the movant will succeed on the merits; (ii) the possibility that, without an injunction, the movant will suffer irreparable harm; (iii) the balance of relevant hardships as between the parties; and (iv) the effect of the court's ruling on the public interest. Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006). The first of these four factors normally weighs heaviest in the decisional scales. New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). That is especially true in copyright cases because the resolution of the other three factors often turns on the plaintiff's likelihood of success. See, e.g., Concrete Mach. Co. v. Classic Lawn Orns., Inc., 843 F.2d 600, 611-12 (1st Cir. 1988).

When an appeal is taken from the grant or denial of a preliminary injunction, appellate review is for abuse of discretion. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st

-5-

Cir. 1996). Within that rubric, we assay the district court's findings of fact for clear error and its resolution of abstract legal questions de novo. Air Line Pilots Ass'n, Int'l v. Guilford Transp. Indus., Inc., 399 F.3d 89, 95 (1st Cir. 2005). In the expanse between those two poles, we afford substantial deference to the lower court's "[j]udgment calls and . . . balancing of conflicting factors," Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005); we will disturb such determinations only if the trial court is shown to have "ignored pertinent elements deserving significant weight, considered improper criteria, or, though assessing all appropriate and no inappropriate factors, plainly erred in balancing them," Ross-Simons, 102 F.3d at 16.

This is a rifle-shot appeal. The defendants take dead aim at the district court's handling of the first preliminary injunction factor: likelihood of success. We cabin our discussion accordingly.

## B.

Copyright protection can subsist in original plush-toy designs. See 17 U.S.C. § 102(a)(5); see also Ty, Inc. v. Publ'ns Int'l Ltd., 292 F.3d 512, 515 (7th Cir. 2002). The holder of a valid plush-toy copyright possesses exclusive rights to reproduce and distribute not only exact "copies" of the toy but also "derivative works" based upon it. 17 U.S.C. § 106. A person who

trespasses upon any of these exclusive rights may be held liable for copyright infringement. Id. § 501.

To prevail on a copyright infringement claim, a party must prove both control of a valid copyright and copying of original elements of the work by the putative infringer. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). In this instance, the defendants concede that Coquico obtained a valid copyright. Thus, the ganglion of this appeal is the second requisite: copying of original elements.

That requirement itself involves a bifurcated inquiry. First, the copyright holder must show that, as a factual matter, the putative infringer copied the protected work. Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 60 (1st Cir. 2000). Second, the holder must show that the copying was so egregious as to render the allegedly infringing and infringed works substantially similar. Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 813 (1st Cir. 1995).

Of course, copyright law protects original expressions of ideas, not the ideas themselves. Johnson v. Gordon, 409 F.3d 12, 19 (1st Cir. 2005). This originality requirement cuts across both the actual copying and substantial similarity branches of the second-step analysis. Thus, in conducting that analysis, an inquiring court must focus upon the "constituent elements of the [plaintiff's] work that are original." Feist, 499 U.S. at 361.

Accordingly, we turn to the binary appraisal that these principles require.

1. **Actual Copying**. A party may demonstrate actual copying through either direct or circumstantial evidence. Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 33 (1st Cir. 2001). Coquico traversed the latter route, endeavoring to prove that the defendants enjoyed access to Común and that their later-created product (the Encantos coquí) is sufficiently similar to Común that a fair comparison of the two stuffed animals gives rise to an inference of actual copying.

Rodríguez testified that he had designed the Encantos coquí by making modifications to a prototype sent to him by a Chinese manufacturer and that any similarities between his plush toy and Coquico's were the result of his desire to replicate the coquí as it exists in nature. But the district court did not credit this testimony; and as the finder of fact, the court was not obliged to do so. In any event, the record offers ample circumstantial evidence to support the court's finding that Coquico was likely to succeed on the issue of actual copying.

It is undisputed that Rodríguez, through his prolonged tenure with Coquico, had access to proprietary design and manufacturing information concerning Común well before Identiko began fabricating the Encantos coquí. What we have called "probative similarity" can, when accompanied by proof of access,

-8-

serve as a harbinger of actual copying, see Johnson, 409 F.3d at 18, and the record in this case fully supports a finding of probative similarity between Común and the Encantos coquí. The plush toys are nearly identical in many material respects, including shape, features, stitching, shading, posture, adornment, and dimensions.[3] This combination of access to information concerning the design and production of Común and the probative similarity between the two products adequately buttresses the district court's determination that Coquico had shown a likelihood of success on the issue of actual copying.

    **2.** **Substantial Similarity**. We come now to the second step in the illicit copying pavane: substantial similarity. Works are substantially similar within the intendment of copyright law if they are so alike that the later (unprotected) work can fairly be regarded as appropriating the original expression of the earlier (protected) work. See Yankee Candle, 259 F.3d at 33. To gauge substantial similarity in cases involving non-technological consumer products, courts often employ an "ordinary observer" test. Under that metric, the allegedly infringing work will be deemed substantially similar to the allegedly infringed work if an ordinary

---

    [3] In this case, the congruities that sustain a finding of probative similarity merge with those that sustain a finding of substantial similarity. Thus, we furnish more detail in connection with our subsequent discussion of that issue. See infra Part II(B)(2).

observer would be disposed to overlook any disparities in the works. See Concrete Mach., 843 F.2d at 607.

The district court found that an ordinary observer would be disposed to overlook any discrepancies between Común and the Encantos coquí and regard their origin as the same. Coquico, 2007 WL 3034259, at *3-4. On that basis, the court found the works substantially similar. Id. at *4. The defendants attack this finding on two fronts. We conduct the necessary triage.

The defendants' first challenge accuses the lower court of relying on inapposite subject matter. That accusation starts with a correct premise: that the substantial similarity inquiry must focus on those aspects of the copyrighted work that are original. See Johnson, 409 F.3d at 19; Matthews v. Freedman, 157 F.3d 25, 27 (1st Cir. 1998). From that starting point, the defendants posit that Común's only protected elements are its brass button and informational hang tag, which do not appear in the defendants' rendering of the coquí. In their view, the remainder of Común's content is unprotected by operation of the merger and scènes à faire doctrines.

A court normally should commence its evaluation of this type of defense by dissecting the copyrighted work and separating its original expressive elements from its unprotected content. See, e.g., Johnson, 409 F.3d at 19; Concrete Mach., 843 F.2d at 608-09. In performing this dissection, the court should not lose sight of

-10-

the forest for the trees; that is, it should take pains not to focus too intently on particular unprotected elements at the expense of a work's overall protected expression. See Situation Mgmt. Sys., Inc. v. ASP. Cons'g LLC, ___ F.3d ___, ___ (1st Cir. 2009) [2009 WL 709422, at *5].

Appellate review of the originality vel non of the constituent elements of the copyrighted work is de novo. See Yankee Candle, 259 F.3d at 34 n.5. After careful consideration, we conclude that the defendants' reasoning on this point is artificially narrow and, therefore, unconvincing.

We begin with the basics. The merger doctrine denies copyright protection when creativity merges with reality; that is, when there is only one way to express a particular idea. Concrete Mach., 843 F.2d at 606. The doctrine of scènes à faire denies copyright protection to elements of a work that are for all practical purposes indispensable, or at least customary, in the treatment of a given subject matter. JCW Invs., Inc. v. Novelty, Inc., 482 F.3d 910, 915 (7th Cir. 2007). We agree that, in tandem, these doctrines foreclose copyright protection insofar as Común's characteristics are ineluctably and inextricably intertwined with the idea of producing a realistic depiction of a coquí. For example, Coquico cannot possess a monopoly on brown-colored depictions of coquíes that have two eyes, two ear discs, four legs, and nine toes (four front and five rear). See, e.g., Satava v.

-11-

Lowry, 323 F.3d 805, 811 (9th Cir. 2003); Aliotti v. R. Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987).

By the same token, insofar as Común's qualities are necessary byproducts of the stuffed-animal artistic medium, those qualities are not subject to copyright protection. Thus, Coquico cannot use the copyright laws as a means of cornering the market for ersatz coquíes that have a soft and velutinous feel. See, e.g., Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1286 (10th Cir. 1996); Aliotti, 831 F.2d at 901.

Here, however, the defendants exaggerate the impact of the merger and scènes à faire doctrines. The attributes of Común that are unprotectable by reason of these doctrines do not exhaust — or even come close to dominating — a comparison between the two products. Moreover, the district court's finding of substantial similarity is grounded on a plethora of protectable attributes.

Notwithstanding the defendants' importunings, there is no singular manner of depicting the coquí común by way of the plush-toy medium. Indeed, any attempt to create a stuffed-animal rendering of the coquí will involve countless artistic decisions, whether deliberately or intuitively made, concerning the precise size, shape, posture, color, juxtaposition of features, stitching, and adornment of the toy. The task doubtless will entail some measure of simplification: certain elements of the subject will be omitted

altogether while others will be stressed, perhaps to the point of exaggeration.

These considerations are borne out in the instant case. Without attempting an exhaustive enumeration of Común's protected content, we hold that, at a minimum, the following original features are protectable:

> 1. Común's distinctive stitching pattern is protectable. <u>See</u>, <u>e.g.</u>, <u>Segrets</u>, 207 F.3d at 62; <u>Aliotti</u>, 831 F.2d at 901.
>
> 2. Común's idiosyncratic color combination is protectable. <u>See</u>, <u>e.g.</u>, <u>Kay Berry, Inc.</u> v. <u>Taylor Gifts, Inc.</u>, 421 F.3d 199, 207 (3d Cir. 2005); <u>Sturdza</u> v. <u>United Arab Emirates</u>, 281 F.3d 1287, 1296 (D.C. Cir. 2002).
>
> 3. Común's pose is protectable. <u>See</u>, <u>e.g.</u>, <u>Concrete Mach.</u>, 843 F.2d at 607.
>
> 4. The placement of the flag stitched onto Común's underbelly is protectable. <u>See</u>, <u>e.g.</u>, <u>Boisson</u> v. <u>Banian, Ltd.</u>, 273 F.3d 262, 274 (2d Cir. 2001).
>
> 5. Común's dimensions, when combined with the aforementioned elements, are protectable. <u>See</u>, <u>e.g.</u>, <u>Kay Berry</u>, 421 F.3d at 207.

These elements are neither inevitable concomitants of an effort to produce an anatomically correct portrayal of the coquí nor necessary byproducts of the stuffed-animal medium. There is no evidence in the record demonstrating that Común mirrors any particular coquí in nature.[4] What evidence there is about the coquí

---

[4] The defendants attempted to introduce such evidence but the district court rejected their proffer on authentication grounds. The defendants have not appealed that ruling.

in nature suggests the contrary: the coquí común exists in myriad shades of beige, brown, and tan; coquíes can and do strike a wide variety of poses; coquíes do not have embedded flags; a stuffed-animal rendering of a coquí need not have Común's precise dimensions (which depart dramatically from those of coquíes in nature); and, finally, the actual coquí has no stitching (and, relatedly, many different stitching patterns can be used to construct stuffed animals). To cinch the matter, the record is replete with stuffed-animal depictions of coquíes that bear little resemblance to Común.

In finding substantial similarity, the district court relied on many of these protected elements, including stitching pattern, color combination, posture, and size. See Coquico, 2007 WL 3034259, at *3. Moreover, the court observed, in an earlier unpublished rescript on a different issue, that both Común and the Encantos coquí have Puerto Rican flags of the same size stitched onto the same portion of their anatomy. See Coquico, Inc. v. Rodríguez-Miranda, Civ. No. 07-1432, slip op. at 10 (D.P.R. Aug. 27, 2007). These features and observations defenestrate the defendants' assertion that the district court focused too intently on unprotected content.

The defendants' second challenge postulates that whatever shared qualities the two plush toys may have, those likenesses do not rise to the level of substantial similarity. This challenge lacks force.

-14-

In this regard, the defendants invoke a familiar construct: that the level of resemblance required to establish substantial similarity may vary with the extent to which the copyrighted work is or is not a faithful reproduction of an object in the public domain. See, e.g., Satava, 323 F.3d at 812; Concrete Mach., 843 F.2d at 606-07. Building on that foundation, the defendants contend that Coquico's copyright is not very robust because Común purports to mimic a wild animal (and, thus, an object in the public domain). This contention represents a triumph of hope over reason.

The simple truth is that even a realistic reproduction of a natural phenomenon may enjoy copyright protection. See, e.g., Superior Form Builders, Inc. v. Dan Chase Taxid. Supply Co., 74 F.3d 488, 492 (4th Cir. 1996); Kamar Int'l, Inc. v. Russ Berrie & Co., 657 F.2d 1059, 1061 (9th Cir. 1981). The determining factors are whether the work possesses original expressive elements and whether the alleged infringer has copied those elements, as opposed to gleaning them from the phenomenon in nature. The elements of original expression that we have catalogued above show beyond hope of contradiction that this is a case in which art imitates nature to a degree — but without forfeiting copyright protection.

The defendants' more generic argument is that the two plush-toy products are not, in fact, substantially similar under the "ordinary observer" test. To bolster this argument, they note some

-15-

disparities between the two products, including slight differences in the bulkiness of toes and faces, minimal variation in color tones, dissimilarities in hang tags, and the fact that the Encantos coquí has no brass button and bears the words "Puerto Rico" and "Coquí" on its belly. Yet substantial similarity does not mean absolute identicality, and the district court found that an ordinary observer would be disposed to overlook these disparities and conclude that the wares were the same. Coquico, 2007 WL 3034259, at *4. We review this finding for clear error, see Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 964-65 (8th Cir. 2005) (collecting cases), and we discern none.

The similarities preponderate here. As previously discussed, the stitching, color combination, posture, size, and flag location of the two products are virtually identical.

If more were needed — and we doubt that it is — Coquico presented the testimony of a seasoned vendor of plush toys, who vouchsafed that he unwittingly received shipments of the Encantos coquí and did not notice the difference until a much later date (when he closely examined his wares to ascertain their provenance). This testimony, credited by the nisi prius court, was strong proof that an ordinary observer would overlook any differences between Común and the Encantos coquí. On this record, then, the district court was fully warranted in concluding that Coquico had a high probability of prevailing on the substantial similarity issue.

-16-

**III. CONCLUSION**

To recapitulate, Coquico has adduced ample evidence to ground both a finding of actual copying and a finding of substantial similarity. Consequently, the district court cannot be said to have erred or abused its discretion in appraising Coquico's likelihood of success.

We need go no further. Because the defendants have not challenged any other aspect of the district court's preliminary injunction calculus, our journey is at an end.

**Affirmed**.