Jose **MOLINELLI–FREYTES,**
et al., Plaintiffs,

v.

**UNIVERSITY OF PUERTO RICO,**
et al., Defendants.

**Civil No. 09–1655 (DRD).**

United States District Court,
D. Puerto Rico.

April 5, 2010.

Christina M. Beauchamp–Richards, Guaynabo, PR, Tamara Sosa–Pascual, Pascual, Moran & Associates, San Juan, PR, for Plaintiff.

Jorge E. Perez–Diaz, Jason R. Aguilo–Suro, Maria Dolores Trelles–Hernandez, Pietrantoni Mendez & Alvarez, LLP, Maria De Lourdes Rivera–Sostre, Vanessa D. Bonano–Rodriguez, Department of Justice, Christian E. Pagan–Cordoliani, Puerto Rico Department of Justice, San Juan, PR, for Defendant.

### AMENDED OPINION AND ORDER NUNC PRO TUNC

DANIEL R. DOMINGUEZ, District Judge.

## I. PROCEDURAL HISTORY

The instant case is a copyright infringement action brought under the Copyright

Act of 1976, as amended, 17 U.S.C. § 101, *et seq,* and a procedural due process claim brought under 42 U.S.C. § 1983, as well as claims arising under the law of Puerto Rico which are attached to the instant case via the exercise of the Court's supplemental jurisdiction. Plaintiffs allege that they created an original manuscript ("the Proposal") during non-working hours while employed as professors at the University of Puerto Rico ("UPR"). Plaintiffs further allege that UPR has wrongfully implemented a version of the Proposal in order to establish a Graduate Program in Environmental Science.

On July 30, 2009, Plaintiffs filed a *Motion Requesting Preliminary Injunction* (Docket No. 7) in the instant case. Therein, Plaintiffs requested that the Court order several types of injunctive relief. Specifically, the relief requested [1] was that the Court enjoin UPR via its officials acting in their official capacities ("the UPR Defendants" or "Defendants") from approving, fostering, implementing or enrolling students in a Masters and/or Doctorate Program in Environmental Sciences based upon the Proposal and from engaging in any acts which would violate Plaintiffs' copyright over the Proposal; that the UPR Defendants deliver any copies of the Proposal and any derivative works to Plaintiffs; and that the UPR Defendants file a list of all persons who have had access to or have used the Proposal or any of its derivative works. On August 31, 2009, Defendants filed a *Response to Show Cause Order (Docket No. 14) and Opposition to Preliminary Injunction Request* (Docket No. 33). In this filing, Defendants raised the work-for-hire defense as a reason why the Court should not impose the preliminary injunction requested by Plaintiffs.

After seven days of hearings regarding the possible imposition of a preliminary injunction against the UPR Defendants (Docket Nos. 158–164), the Court ordered parties to brief their respective positions (Docket No. 164). Subsequently, on March 27, 2010, Defendants filed a *Post–Hearing Brief* (Docket No. 165) outlining their arguments for why a preliminary injunction should not be imposed in the instant case. Specifically, Defendants argued that Plaintiffs had not made an adequate showing of irreparable injury as the only harm which Plaintiffs would potentially suffer was the inability to market the Proposal to other universities. Defendants maintained that, because the material contained within the Proposal was specific to UPR, other universities could not utilize the Proposal. Therefore, Defendants argued, Plaintiffs would suffer no harm from a denial of their motion for a preliminary injunction because there was no external market for the Proposal. Further, Defendants argued that, even if Plaintiffs had shown that some harm would befall them if they were not granted a preliminary injunction, the balance of hardships would weigh in Defendants' favor as they would suffer significant financial hardship via a potential loss of the $3,000,000 in federal aid received through an IGERT grant, as well as damage to the university's reputation, if the injunction request was granted. Defendants also asserted that the public interest weighs against imposition of a preliminary injunction as the students who are enrolled in the program would be precluded from earning the degrees which they currently work towards, and as research associated with the graduate program would be stymied.

---

**1.** The Court shall not list herein any injunctive relief sought against former parties to the instant action whose motions to dismiss were previously granted.

Defendants further argued that Plaintiffs have not established a likelihood of success on the merits in the instant case and, as a result, should not be granted the requested preliminary injunction. Specifically, Defendants made three arguments regarding Plaintiffs' failure to establish their likelihood of success on the merits. First, Defendants argued that the Proposal was not copyright-able material as it was a functional work or, alternatively, fell within the "scenes a faire" [2] doctrine. Next, Defendants asserted that the work-for-hire doctrine encompasses the Proposal as it is the type of work which is protected in the academic community and that, therefore, Plaintiffs are not entitled to copyright protection of the Proposal. Finally, Defendants argued that Plaintiffs are estopped [3] from prosecuting the instant case.

Plaintiffs in turn filed a *Memorandum in Support of Injunction Request* (Docket No. 166) on March 28, 2010. Therein, Plaintiffs argued first that the Proposal is protected under copyright law and that the Graduate Program in Environmental Sciences implemented by UPR is therefore an unauthorized derivative work that fell outside the scope of the work-for-hire doctrine as it was not specifically commis-sioned to Plaintiffs. Thus, Plaintiffs alleged that consideration of the most weighty factor in the Court's preliminary injunction analysis, the likelihood of success on the merits, weighs in favor of granting the injunction request. Plaintiffs further asserted that they are suffering irreparable harm in the form of a violation of the rights guaranteed by the Copyright Act, particularly the "loss of economic value of their manuscript which, once fully implemented in the UPR, will lose all its market value." Plaintiffs also emphasized that Defendants have failed to prove their work-for-hire defense at this time as the standard for this defense is higher in the academic community. Plaintiffs particularly highlighted an argument that UPR's policy mirrors the work-for-hire doctrine established in *Weinstein v. Univ. of Illinois*, 811 F.2d 1091 (7th Cir.1987).[4] Plaintiffs also broadly asserted that the process of creating the Proposal is an academic function, rather than an administrative function for purposes of applying the work-for-hire doctrine. Finally, Plaintiffs highlighted that there is no evidence of a specific commission of the Proposal to Plaintiffs by UPR. As a final matter, Plaintiffs argued that the UPR Defendants who were originally sued in their individu-

2. "The doctrine of scenes a faire denies copyright protection to elements of a work that are for all practical purposes indispensable, or at least customary, in the treatment of a given subject matter." *Coquico, Inc. v. Rodriguez–Miranda*, 562 F.3d 62, 67 (1st Cir.2009).

3. As Defendants' arguments regarding estoppel appear to be based on a re-hashing of their argument for the application of laches in the instant case, which the Court already rejected (Docket No. 152), the Court shall not consider these arguments in the instant *Opinion and Order*.

4. Plaintiffs rely on the opinions of an intellectual property expert, Dr. Salazar, to support this proposition. However, as the Court may not accept expert testimony as to the proper application of laws of the U.S. or Puerto Rico, the Court shall not accept Dr. Salazar's opinions as statements of the law as it should be followed by the Court. *See e.g. Gomez v. Rivera Rodriguez*, 344 F.3d 103, 114 (1st Cir. 2003) (recognizing that "[c]ourts generally have held legal opinion testimony inadmissible"). Therefore, the Court shall analyze Plaintiffs proffered evidence regarding the work-for-hire defense afresh, drawing its own conclusions and informing itself with the opinions of Dr. Salazar much as it would the opinions of a law review author, but shall not rely on the legal opinions of Dr. Salazar as correct statements of the law or its proper application.

al capacities should not enjoy qualified immunity in the instant case.

On March 29, 2010, Defendants filed a brief in opposition to Plaintiff's brief (Docket No. 167). In this brief, Defendants first asserted that, at this stage of the case, qualified immunity should not be addressed. Further, Defendants argued that Plaintiffs failed to cite any concrete harms which they suffered but, rather included a laundry list of the Copyright Act rights which they believe were infringed by Defendants. Addressing the likelihood of success on the merits prong of the preliminary injunction analysis, Defendants then asserted that Plaintiffs have relied upon legal averments which are unsupported by citation and which, further, are incorrect. Defendants further argued that Dr. Salazar's interpretation of the work-for-hire doctrine is "not controlling" in the instant case and, further, is irrelevant. The remainder of Defendants' brief is dedicated to rebutting Plaintiffs' specific evidentiary assertions.

Also on March 29, 2010, Plaintiffs filed a reply to Defendants' opposition (Docket No. 169). Therein, Plaintiffs rebutted Defendants' evidentiary assertions, particularly those which reference the policies of UPR. Further, Plaintiffs argued that the functionality, scenes a faire and merger doctrines are not applicable to the instant case.

## II. QUALIFIED IMMUNITY

■■ The "doctrine of qualified immunity protects government officials from [personal] liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, "government officials performing discretionary functions gener-

ally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lane v. First Nat'l Bank of Boston*, 687 F.Supp. 11, 15 (1st Cir.1988) (quoting *Borucki v. Ryan*, 827 F.2d 836, 837 (1st Cir.1987)) (internal quotations omitted). This is to say that the Court must find that "[p]ublic officials are ... entitled to qualified immunity *unless* the facts establish that their conduct violated a constitutional [or federal statutory] right that was clearly established at the time of the violation such that a reasonable officer would have known that the conduct at issue was unlawful." *Whitfield v. Melendez–Rivera*, 431 F.3d 1, 7 (1st Cir.2005) (internal quotations omitted).

■■ "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009). Thus, "[w]hile an official has a presumptive knowledge of constitutional standards, he or she is not expected to determine the manner in which the law's grey areas will be clarified and defined." *Lane*, 687 F.Supp. at 15.

■ Although, in the past, courts in this Circuit and in most other Circuits had analyzed the application of qualified immunity in a three-part test, the current qualified immunity analysis espoused by the Supreme Court entails only two steps. *See id.* (applying the two-step analysis applied after *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)); *see also Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir.2009) (clarifying that the second step of the two-step inquiry essentially compresses two prongs of

the previous three-step inquiry). Thus, under the presently applicable inquiry, in order "[t]o determine whether a particular officer is entitled to qualified immunity, a court must decide: (1) whether the facts alleged or shown by the Plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation." *Estrada v. Rhode Island,* 594 F.3d 56, 62–63 (1st Cir.2010). In the wake of *Pearson,* either step of the two-step analysis may become the launching pad for the Court's analysis; strict adherence to a sequential qualified immunity analysis is no longer necessary. *Maldonado v. Fontanes,* 568 F.3d 263, 269 (1st Cir.2009)

The second step, in turn, has two aspects. *Id.* First, the Court must analyze whether "the contours of the right [were] sufficiently clear [so] that a reasonable official would understand that what he [did] violate[d] that right." *Maldonado,* 568 F.3d at 269 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The second aspect for the Court's consideration is "whether a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights" in the situation with which the defendant was confronted. *Id.* This is to say that "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Id.* "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009).

Plaintiffs rest their current argument regarding qualified immunity upon evidence presented during the hearings which indicated that the drafting of the Proposal predated Dr. Weiner's appointment as dean. As a preliminary matter, the Court must note that Plaintiff's brief argument has neither specified which of the original individual defendants should not be entitled to qualified immunity, nor presented the Court with a thorough argument regarding this matter. As a result, the Court may not grant Plaintiffs' request that the Court re-instate the case against any or all of the individual defendants for whom the case was already dismissed on qualified immunity grounds at this time.

Further, the Court notes that, as Plaintiffs have already been informed, because knowledge of the violation of constitutional or federal statutory rights is an essential element for the denial of qualified immunity, only a defendant who knew that the material might be subject to Plaintiffs' copyright, rather than the university's, and proceeded the process of implementing the Proposal despite this knowledge might be denied qualified immunity in the instant case. *See e.g. Whitfield,* 431 F.3d at 7. Accordingly, for the reasons set forth in this *Opinion and Order,* the Court also finds that, as the law regarding the potential application of the work-for-hire doctrine in an academic context has not been conclusively settled at the instant time, it is exceedingly unlikely that Plaintiffs can overcome the presumption of qualified immunity as applied to any individual defendant as, although "an official has a presumptive knowledge of constitutional standards, he or she is not expected to determine the manner in which the law's grey areas will be clarified and defined." *Lane,* 687 F.Supp. at 15.

Additionally, the balance of the facts regarding whether the Proposal falls within the ambit of the work-for-hire doctrine or a potential "teacher exception" as pre-

sented to the Court at this time is very close and may ultimately rest on issues of credibility.[5]

Thus, even if the Court were to determine that the law regarding the work-for-hire doctrine as applied to the instant case was clearly established for the purposes of the qualified immunity inquiry, Plaintiffs would still have to prove that an individual defendant knew beforehand that the Proposal might not fall within the work-for-hire doctrine and proceeded to implement the Proposal anyways in order to overcome that defendant's invocation of qualified immunity.

### III. PRELIMINARY INJUNCTION

In order for the Court to issue injunctive relief under Federal Rule of Civil Procedure 65 and the Copyright Act of 1976,[6] the balancing of four factors must weigh in the moving party's favor. *See Coquico, Inc. v. Rodriguez–Miranda*, 562 F.3d 62, 66 (1st Cir.2009). These four factors are: "(i) the likelihood that the movant will succeed on the merits; (ii) the possibility that, without an injunction, the movant will suffer irreparable harm; (iii) the balance of the relative hardships as between the parties; and (iv) the effect of the court's ruling on the public interest." *Id.* Of these four factors, the first must weigh the heaviest in the Court's inquiry, particularly in copyright cases as "the resolution of the other three factors often turns on the plaintiff's likelihood of success." *Id.* The First Circuit has stated that "[t]he heart of [the preliminary injunction] test is ... the question [of] whether the harm caused plaintiff without

the injunction, in light of the plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause defendants." *Vargas–Figueroa v. Saldana*, 826 F.2d 160, 162 (1st Cir.1987). In fact, the First Circuit has named the "likelihood of success" factor the *sine qua non* of the preliminary injunction test. *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir.1993). Thus, the Court's analysis of Plaintiffs' request for a preliminary injunction should begin with the probability of success, as this "furcula [is] critical." *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir.1991).

Accordingly, the Court shall begin its inquiry with this, the most weighty of the preliminary injunction factors. In order to prevail upon a copyright infringement claim, the plaintiff must make a bifurcated showing: first, that he or she controls a valid copyright; second, that the defendant copied the original elements of the copyrighted work. *Coquico, Inc.*, 562 F.3d at 66. Here, the case turns upon Plaintiff's ability to prove the first of these two factors. The lynchpin of the instant case is whether Plaintiffs or UPR had the right to copyright the Proposal. As recognized by the parties in the instant case, the applicability or non-applicability of the work-for hire doctrine shall play a deciding role here.

While the Copyright Act typically affords copyright protection to the person who creates a work, the "Act carves out an important exception ... for works made for hire." *Saenger Org., Inc. v. Nationwide Ins. Lic. Associates, Inc.*, 119 F.3d 55, 59 (1st Cir.1997). "Under the

---

5. For example, the question of whether Dr. Weiner in fact commissioned the Proposal is currently unanswered as the answer to this question depends on a weighing of the contradictory evidence offered by Dr. Weiner and Plaintiffs during the hearings.

6. Federal Rule of Civil Procedure 65(f) specifies that Rule 65 pertains to claims arising under the Copyright Act.

Copyright Act, a work comes within the work for hire doctrine if it consists of either (i) a work prepared by an employee within the scope of her employment or (ii) one prepared by an independent contractor on special order or commission." *Warren Freedenfeld Assoc. v. McTigue,* 531 F.3d 38, 48 (1st Cir.2008).

 Here, the parties do not dispute that Plaintiffs are "employees" of UPR within the meaning of the statute, so the Court's inquiry shall focus on the "scope of employment" portion of the first work-for-hire scenario listed above. Although the First Circuit has not defined "scope of employment" for the purposes of the work-for-hire inquiry, courts in other circuits, as well as the Supreme Court, have looked to the Restatement of Agency to determine what the term means in this context. *See Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989); *see also Avtec Sys., Inc. v. Peiffer,* 21 F.3d 568, 571 (4th Cir. 1994); *see also Vanderhurst v. Colorado Mtn. College Dist.,* 16 F.Supp.2d 1297, 1307 (D.Colo.1998). The Restatement of Agency defines conduct as falling within the scope of employment "only if (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." Restatement (Second) of Agency §§ 228–229.

Currently, the scope of the work-for-hire doctrine within the academic community and, particularly, the potentially continued existence of a "teacher exception" to the work-for-hire doctrine, remains a question unanswered and highly debated by the courts and intellectuals. *See e.g.* Field, Thomas G., Jr., *From Custom to Law in Copyright,* 49 IDEA 125, 135–144 (2008) (analyzing the scope of the work-for-hire defense in the academic realm to deter-

mine that "school ownership of copyright in employees' work has been denied only when the issue is tangential to assertions by disputants entitled to little sympathy," but also finding that the terminology of school policies are typically resolved against the institution); *see also* Kim, Nancy S., *Martha Graham, Professor Miller and the "Work for Hire" Doctrine: Undoing the Judicial Bind Created by the Legislature,* 13 J. INTELL. PROP. L. 337, 357–362 (Spring, 2006) (stating that, "[c]urrently, it is uncertain whether a teacher exception would survive a challenge by an institution under the work for hire doctrine"); *see also* Luppino, Anthony J., *Fixing a Hole: Eliminating Ownership Uncertainties to Facilitate University–Generated Innovation,* 78 UMKC L.Rev. 367, 395–99 (Winter 2009) (finding that *Weinstein v. Univ. of Ill.,* 811 F.2d 1091 (7th Cir.1987), "lends support to a presumption in favor of a faculty member's copyright ownership of traditional academic works" where an institutional policy makes faculty ownership the rule, rather than the exception); *see also* Ware, Robert III, *Copyrights, Professors and Public Universities,* 16 EDUC. & L.J. 251, 256–663 (2007) (discussing case law related to the work-for-hire doctrine in the academic context and noting that leading cases in the field "are in opposition" with each other).

In 1987, the Seventh Circuit handed down its decision in the case of *Weinstein v. Univ. of Ill.,* 811 F.2d 1091. The court in this case was faced with a civil rights action brought by a dismissed faculty member against the public university which had previously employed him. *Id.* Therein, the plaintiff disputed a fellow faculty member's use of a paper which was co-authored by plaintiff and this peer. *Id.* at 1092–93. The court in that case analyzed the university's policy, which defined the work-for-hire doctrine as it applied to

its employees, and ultimately rejected the university's claim that the paper fell within the work-for-hire defense. *Id.* at 1094. The court reached this conclusion by reading the university's policy narrowly in light of the "academic tradition since copyright law began" of allowing faculty members to retain the ability to copyright their scholarly articles and other intellectual property. *Id.*

In 1988, the Seventh Circuit once again tackled the application of the work-for-hire defense in an academic context in *Hays v. Sony Corp. of America,* 847 F.2d 412 (7th Cir.1988). In this opinion, authored by Judge Posner, the court discussed in dicta the strong possibility that "academic writings" were not works-for-hire under the meaning imposed by the Copyright Act of 1976,[7] despite contrary indications which could be derived from a plain reading of the statute. *Id.* at 416. However, the court in that case ultimately avoided making an explicit finding that the "teacher exception" to the work-for-hire defense survived the 1976 Act, stating that, in that case, that the court "need not try to decide the issue ... for even if the statute abolished the teacher exception this would not necessarily spell victory for [the defendant]." *Id.* at 417.

In 1998, the baton passed to the District of Colorado to further analyze the application of the work-for-hire defense in an academic setting in *Vanderhurst v. Colo. Mtn. College Dist.,* 16 F.Supp.2d 1297 (D.Colo.1998). In this case, the court ultimately ruled that a course outline created by a professor was a work made for hire created within the scope of the professor's employment. *Id.* at 1307. In order to reach this conclusion, the Court relied upon the Restatement (Second) of Agency as well as Nimmer on Copyright to find that, in addition to the principles listed above, the Court might also consider whether "1) [the work] is the kind of work the person is employed to perform; 2) the work occurs substantially within work hours; and 3) the work is actuated, at least in part, by a purpose to serve the employer" in deciding whether a work is made for hire. *Id.* The court in that case looked to the defendant's policies regarding faculty member's duties as well as the context in which the outline was created in order to determine that the copyright did not belong to the faculty member who authored it under the work-for-hire doctrine. *Id.*

Upon a reading of the cases above, which discuss the application of the work-for-hire doctrine in an academic context,

7. Judge Posner outlined his rationale for concluding that a "teacher exception" to the work-for-hire doctrine might exist in the context of college professors as follows:

[u]ntil 1976, the statutory term 'work made for hire' was not defined, and some courts had adopted a 'teacher exception' whereby academic writing was presumed not to be work made for hire. The authority for this conclusion was in fact scanty, ... but it was scanty not because the merit of the exception was doubted, but because, on the contrary, virtually no one questioned that the academic author was entitled to copyright his writings. Although college and university teachers do academic writing as a part of their employment responsibilities and use their employer's paper, copier, secretarial staff, and (often) computer facilities in that writing, the universal assumption and practice was that (in the absence of an explicit agreement as to who had the right to copyright) the right to copyright such writing belonged to the teacher rather than to the college or university. There were good reasons for the assumption. A college or university does not supervise its faculty in the preparation of academic books and articles, and is poorly equipped to exploit their writings, whether through publication or otherwise; we may set to one side cases where a school directs a teacher to prepare teaching materials and then directs its other teachers to use the materials too.

847 F.2d at 416.

the Court must determine that the potential application of a "teacher exception" to the general work-for-hire rule continues to be debated among jurists, as its continued existence has not been decisively determined. As acknowledged in *Hays*, a literal reading of the statute hints that this common law exception was abolished by the 1976 Act. *See* 847 F.2d at 416. Further, the most recent court to tackle the issue found that the work-for-hire defense does apply in at least some academic contexts. *See* 16 F.Supp.2d at 1307. However, dicta of previous decisions have indicated that the common law "teacher exception" may, in fact, apply even after the enactment of the 1976 Act, although these same decisions appear to indicate that such an application would be limited to works which are truly "academic" in scope or which fall within the terms of a university's written policy regarding ownership of intellectual property. *See* 811 F.2d at 1094; *see also* 847 F.2d at 416.

Although the remaining parties to the instant case have skirted the issue of whether the "teacher exception" applies following enactment of the 1976 Act in their briefs and in their arguments at the hearing, the parties have failed to fully brief the legal issues relating to this topic, which the Court finds is crucial to the final outcome in the instant case. The existence of a "teacher exception" for certain works could prove to be the deciding factor in favor of Plaintiffs in the instant case if they convince the fact-finding body that the Proposal should be considered an academic work, rather than the product of an exercise of an administrative function.[8]

Plaintiffs have already touched upon this issue when they cited *Weinstein v. Univ. of Ill.* for the proposition that a university's intellectual property policy, such as that instituted by UPR, shall be binding upon parties and with their assertions that the drafting of the Proposal was an academic task. However, these assertions are made with little reference to legal arguments for why the Court should accept the "teacher exception" to the work-for-hire doctrine, upon which the success of these arguments may be predicated.

■ Likewise, while Defendants have cited several of the cases above within their argument for application of the work-for-hire defense in the instant case, their arguments fail to place sufficient flesh on the bones of their assertions to allow the Court to find that a "teacher exception" to this defense does not exist for academic works. Thus, the Court must find that neither party has, at this time, placed the Court in a position to rule in their favor as to the possible application of the "teacher exception" to the work-for-hire defense. The Court, therefore, must find that a fundamental question of law remains unanswered at present in the instant case. Thus, the Court can not find that either party has shown a likelihood of success on the merits at the instant time. The Court must find that the first, and most weighty, factor of the preliminary injunction analysis, the *sine qua non* element, does not weigh in favor of granting Plaintiffs' request for a preliminary injunction.

Even if the parties had situated the Court in a position to rule upon the applicability of the "teacher exception" here, the Court would have to find that there are questions of material fact which per-

---

**8.** The Court here notes that it is unaware of any previous court which has extended the potential "teacher exception" to the work-for-hire doctrine in the context of "administra-tive" material rather than "academic" material, although no court has fully defined what constitutes "academic" material.

vade the instant case. If the court were to find that the "teacher exception" applied in the instant case, a question of fact as to the "academic" nature of the Proposal[9] would arise. In their brief, Plaintiffs argue that the Court should find that the necessity of assigning the task of completing the Proposal to a professor should necessarily render the drafting of the Proposal an "academic" matter, an assertion which Defendants appear to counter with their argument that there is no precedent for allowing professors to claim copyright ownership over a proposal for establishing a new academic program. Thus, the Court must find that Plaintiffs have not at this time established a likelihood of success on the merits, due to persisting questions of fact and law related to the potential "teacher exception."

Further, even if the Court were to find that a "teacher exception" does not exist, questions of material fact would persist as to the application of the work-for-hire defense in the instant case as the parties vehemently disagree about whether the Proposal was drafted within the scope of Plaintiffs' employment. First, Plaintiffs allege that the drafting of the Proposal was not within the scope of their duties, supporting this allegation with their own testimony as well as with evidence that they did not receive credit hours or extra payment for drafting the Proposal. However, Defendants counter this statement with the testimony of Dr. Weiner, who claims that this task fell within the scope of Plaintiff Molinelli's administrative duties, a claim which is supported by the manner in which the Proposal was tailored specifically for use by UPR from its inception, as well as statements that the Proposal was drafted by the "Program of

Environmental Studies," rather than Plaintiffs themselves as individuals. Accordingly, a genuine issue of fact exists as to the first step of the "scope of employment" analysis embraced by the Supreme Court and applied in those circuits which have encountered this subject matter. Thus, even if the Court were to decline to apply a formal "teacher exception" in the instant case, a genuine issue of triable fact would exist in the instant case regarding application of the work-for-hire doctrine. Accordingly, the Court finds that Plaintiffs have not shown a likelihood of success on the merits in the instant case.

Further, both parties appear to argue that, in the wake of *Weinstein,* the Court should narrow its work-for-hire inquiry to interpreting UPR's policy as applied to the facts of the instant case. The pertinent passage states that "the University of Puerto Rico will hold title when ... works are products of the exercise of administrative or academic functions *specifically commissioned and officially assigned by the institution,* according to the stipulations and applicability of the concept of work done for hire in force, unless otherwise provided." *Exhibit 5, Certification 93–140* (emphasis ours). Defendants argue that the evidence indicates that the Proposal was specifically commissioned and officially assigned to Plaintiffs, supporting this argument with testamentary evidence from the hearings. On the contrary, Plaintiffs argue that designing the Program does not fall within the specific requirements of their employment with UPR and that Plaintiffs' proffered testimony counters Defendants' statements to the contrary. Thus, the Court finds a direct contradiction between the evidence offered

---

9. As noted above, even if a "teacher exception" exists, it appears to be limited to "academic" works.

by Plaintiffs and that offered by Defendants. The Court further notes that the existence of the alleged verbal commission depends entirely upon a determination regarding the credibility of the witness who provided testimony that such a commission existed. Accordingly, even if the Court were to bypass the analysis of whether a "teacher exception" applies to the work-for-hire defense raised in the instant case, and perform only a *Weinstein* inquiry, based upon the parties' own arguments regarding application of UPR's policy regarding intellectual property, the Court would have to find that a material issue of genuine fact exists, which much be determined by the fact-finding jury in the instant case. Therefore, as explained above, under no circumstance may the Court find that Plaintiffs have demonstrated a likelihood of success on the merits in the instant case.

■■■■■ At this time, the parties have not placed the Court in a position to rule conclusively upon the law which is applicable in the instant action regarding the work-for-hire defense and, more narrowly, the potential application of a "teacher imposed following the hearings on the request for a preliminary injunction. Thus, in order to properly narrow the issues in the instant case for trial, the Court hereby orders parties to submit briefs pertaining to this issue and its application in the instant case. The scope of these briefs shall be limited strictly to the application of the work-for-hire doctrine in the academic context. **Plaintiffs' brief is due on or before April 30, 2010. Defendants' brief is due on or before May 31, 2010.** As the Court has found the first, crucial factor of the preliminary injunction analysis is fatally lacking in the instant case, it shall deny Plaintiffs' request for a preliminary injunction unless one of the other factors weighs extremely heavily in favor

of granting the injunction request. *See e.g. Weaver*, 984 F.2d at 12 (finding that the first factor is the *sine qua non* of the preliminary injunction analysis). The only potential for irreparable injury alleged by Plaintiffs refers to the alleged violation of their rights under the Copyright Act, with no specification as to how the alleged violation of these rights impact upon Plaintiffs other than a broad allegation that the Proposal will lose market value once it is fully implemented by UPR. Considering the undisputed fact that UPR has already partially implemented the Proposal, and considering the manner in which the Proposal was specifically tailored to pertain to UPR, rather than to any other university, the Court can not find that Plaintiffs have succeeded in establishing a serious potential for irreparable injury here. *See Gonzalez–Droz v. Gonzalez–Colon*, 573 F.3d 75, 79 (1st Cir.2009) (finding that the movant bears the weight of demonstrating irreparable harm). Further, the Court must find that the third and fourth factors in the preliminary injunction inquiry also weigh against the granting of a preliminary injunction in the instant case as to do so would certainly harm the students who are currently enrolled in the graduate program which is based upon the Proposal and would also hamper the public interest in the scientific research being conducted in conjunction with this program. Furthermore, there is a danger that the issuance of a preliminary injunction in the instant case could result in the loss of the $3,000,000 IGERT grant received by the university, as well as other future endowments. Accordingly, the Court finds that the preliminary injunction analysis favors denial of Plaintiffs' request for a preliminary injunction at this time in the instant case.

## IV. CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Plaintiff's motion for pre-

liminary injunction (Docket No. 7). Further the Court hereby **ORDERS** the parties to brief the application of the work-for-hire doctrine and a potential "teacher exception" in the instant case based upon the facts of the instant case and with particular reference to the applicable university regulations.[10] **Plaintiffs' brief is due on or before April 30, 2010. Defendants' brief is due on or before May 31, 2010.** No extensions of time shall be granted. The Court shall resolve this matter and, if necessary, allow the parties to proceed to the discovery phase of the instant case at that time prior to any hearings regarding entry of a final injunction in the instant case.

**IT IS SO ORDERED.**

10. The Court strongly suggests that specific references to the record and to the admitted documents be made by the parties as the instant case may be a trailblazer in academic copyright law within the First Circuit Court of Appeals.