# United States Court of Appeals
## For the First Circuit

No. 11-1760

DONALD A. HARNEY,

Plaintiff, Appellant,

v.

SONY PICTURES TELEVISION, INC., AND
A & E TELEVISION NETWORKS, LLC,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Lipez, and Howard,
Circuit Judges.

Andrew D. Epstein, with whom Barker, Epstein & Loscocco and
Keith E. Toms were on brief, for appellant.
Bruce P. Keller, with whom Michael J. Beam and Debevoise &
Plimpton LLP were on brief, for appellees.

January 7, 2013

**LIPEZ, Circuit Judge**.  On a sunny April day in 2007, freelancer Donald Harney snapped a photograph ("the Photo") of a blond girl in a pink coat riding piggyback on her father's shoulders as they emerged from a Palm Sunday service in the Beacon Hill section of Boston.  Just over a year later, the pair in the Photo became a national media sensation.  The father, soon-to-be revealed as a German citizen who had assumed the name Clark Rockefeller, had abducted his daughter during a parental visit and was being sought by law enforcement authorities.  Harney's father-daughter photo was used in an FBI "Wanted" poster, and the image was widely distributed in the media as the abduction saga unfolded.[1]  Appellee Sony Pictures Television, Inc. ("Sony") later produced a made-for-television movie based on Gerhartsreiter's identity deception.  Sony depicted the Photo in that movie using an image that was similar in pose and composition to Harney's original, but different in a number of details.

Harney subsequently filed this infringement action, alleging that appellees' use of his photograph without permission

---

[1] The episode lasted about a week and concluded with the girl's safe return and the father's arrest.  It was then discovered that "Rockefeller" was actually Christian Karl Gerhartsreiter, and he was convicted of child abduction in 2009.  Gerhartsreiter is currently being prosecuted for murder in connection with the 1985 death of his California landlady's son.  News reports state that the trial is scheduled to start in Los Angeles in January 2013. See, e.g., Judge Sets Murder Trial Date for 'Clark Rockefeller,' CBS Boston (April 15, 2012) boston.cbslocal.com/2012/04/15/judge-sets-murder-trial-date-for-clark-rockefeller/.

violated federal copyright law. Appellees moved for summary judgment. Concluding that no reasonable jury could find "substantial similarity" between Sony's recreated photo and Harney's original, the district court held that Sony had not violated Harney's exclusive rights to his work. After careful review, we affirm the grant of summary judgment for appellees.

**I.**

Consistent with our approach in evaluating a summary judgment ruling, we present the facts in the light most favorable to appellant Harney. See Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005).

Harney spotted Gerhartsreiter and his daughter, Reigh, on the morning of April 1, 2007 while on assignment for the Beacon Hills Times, a neighborhood newspaper that had asked Harney to take photos of people in and around Beacon Hill. A professional photographer for more than two decades, Harney approached Gerhartsreiter and his daughter as they left a service at the Church of the Advent and obtained permission to photograph them for the newspaper. The Photo was published on the front page of the paper later that month, with the caption, "Parishioners Clark and Reigh 'Snooks' Rockefeller of Pinckney Street celebrated Palm Sunday at the Church of the Advent on March 31 [sic]."

In July 2008, Gerhartsreiter abducted his daughter during a custodial visit. Without Harney's knowledge or consent, a

portion of the Photo was placed on an FBI "Wanted" poster that was distributed nationwide. Harney states that he did not object to this use of the photograph because he did not want to impede the search for the missing child.

The Photo of the seemingly happy father and child became the iconic image of the bizarre saga of Gerhartsreiter,[2] a "professional" imposter who had been passing himself off as a member of the high profile Rockefeller family and whose previous false identities included descendant of British royalty, Wall Street investment advisor and rocket scientist. He also was wanted for questioning in connection with a twenty-year-old homicide in California. Public interest in the story remained high long after Reigh was safely returned to her mother, and interest likewise remained high in Harney's photograph because of its prominent role in the manhunt. Harney licensed the Photo for use in multiple media outlets, including Vanity Fair magazine. In 2010, Sony completed and released a made-for-television movie titled Who is Clark Rockeller?, which was distributed to cable stations by appellee A & E Television Networks, LLC. The ninety-minute docudrama was based on Gerhartsreiter's life, "retell[ing] in

_____

[2] Harney repeatedly describes his Photo as an "iconic" image of the Clark Rockefeller story. We understand him to mean that the prominent role of the photograph in the publicity surrounding Reigh's abduction converted his depiction of a happy father and child into a widely recognized symbol of Gerhartsreiter's life of deception.

dramatic fashion Clark Rockefeller's story and the search for Clark and Reigh." Rule 56.1 Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment, ¶ 15.

To depict the role that the Photo played in the abduction events, Sony recreated it using the actors who were cast in the roles of Clark and Reigh.[3] The new photo ("the Image") was displayed for a total of about forty-two seconds in five scenes demonstrating the Photo's use during the manhunt in three different contexts: (1) as the image in the Wanted poster, (2) in a law enforcement briefing room, and (3) in television news reports about the abduction. The Image also appears, for less than one second, in one of the twenty-two television commercials publicizing the movie.

The Photo and the Image share several important features.[4] Both show a young blond girl wearing a long pink coat and light-colored tights riding piggyback on a man's shoulders. The pair are smiling in both photographs, and they are looking straight at the camera at roughly the same angle. Although Gerhartsreiter and Reigh are closer to the camera in the Photo than the actors are in the Image, both pictures show only the father's upper body. In

---

[3] Sony in fact created two new versions of the Photo, but the differences between them are minor and the fact that there are two images is irrelevant to our analysis. We therefore analyze the issues as if appellees had created only one new image.

[4] The two photographs are reproduced in an appendix to this opinion.

both, the father is holding papers in his left arm with the text of the first page facing the camera.

Some of the differences are minor.  Reigh's coat is a darker pink than the coat worn by the child actor, and its buttons are placed higher on the garment.  Although both men are wearing jackets and ties, Gerhartsreiter's jacket is a dark tweed while the actor's is a solid tan.  Several of the distinctions, however, are more significant.  The background behind Gerhartsreither and Reigh consists of a leafless tree, the church spire, and a bright blue sky.  In the Image, nearly all of the background consists of dark leaves on the branches of a tree, with bits of white-grey sky peeking through in spots.  The papers in Gerhartsreiter's hand are easily identifiable as the program for the service at the Church of the Advent, while the writing on the front of the papers in the actor's hand is not legible.  Its text, however, plainly does not resemble the program held by Gerhartsreiter.  Reigh is holding up a palm leaf in her left hand, but both of the child actor's hands are by her sides, resting on her legs.

Shortly after answering Harney's complaint, which was filed in July 2010, appellees moved for summary judgment on the ground that the Image was not "substantially similar" to the Photo, a necessary element of a copyright violation.  They further argued that their incorporation of the Image in the docudrama was, in any event, a permissible "fair use" under copyright law.  See 17 U.S.C.

§ 107.  Following a hearing, the district court granted summary judgment for appellees and dismissed the case.  The court ruled that the Image was not substantially similar to Harney's photograph because "[w]hen the Harney Photograph and the Sony Image[] are compared, they share the factual content" of the scene captured by the Photo, "but not Harney's expressive elements."  The court concluded that the "limited sharing" between the works was "not enough to establish substantial similarity and copyright infringement."  The court thus did not need to reach appellees' fair use argument, and it did not discuss that issue.

On appeal, Harney argues that the district court misapplied the applicable test for assessing substantial similarity.  He asserts that the court "over-dissect[ed] Harney's Photograph, and thereby overlook[ed] significant aspects of its originality and protected expression."  He further maintains that the appellees are not protected by the fair use doctrine.

**II.**

To establish copyright infringement, a plaintiff must prove "both ownership of a valid copyright and illicit copying." Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 33 (1st Cir. 2001); see also Coquico, Inc. v. Rodríguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009).  Copying another's work does not, however, invariably constitute copyright infringement.  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991) ("Not all copying

-7-

. . . is copyright infringement."); Johnson, 409 F.3d at 17-18. The copying must be sufficiently "extensive that it render[s] the infringing and copyrighted works 'substantially similar.'" Johnson, 409 F.3d at 18 (quoting Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 60 (1st Cir. 2000)) (internal quotation mark omitted).

Moreover, it is permissible to mimic the non-copyrightable elements of a copyrighted work. Copyright protection "extend[s] only to those components of a work that are original to the author," and a work that is sufficiently "original" to be copyrighted may nonetheless contain unoriginal elements. Feist Publ'ns, 499 U.S. at 348; see also, e.g., Johnson, 409 F.3d at 18-19.[5] The Supreme Court recently confirmed that "every idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication." Golan v. Holder, 132 S. Ct. 873, 890 (2012) (quoting Eldred v. Ashcroft, 537 U.S. 186, 219 (2003)) (internal quotation mark omitted); see also Johnson, 409 F.3d at 19 ("[C]opyright law protects original expressions of ideas but it does not safeguard either the ideas themselves or banal expressions of them."). Hence, assessing substantial similarity requires close consideration of which

_____

[5] This principle applies to all types of creative works. See 17 U.S.C. § 102(a) (stating that "[w]orks of authorship" include literary works, dramatic works, pantomimes, "pictorial, graphic, and sculptural works," sound recordings, and architectural works).

-8-

aspects of the plaintiff's work are protectible and whether the defendant's copying substantially appropriated those protected elements. Johnson, 409 F.3d at 18-19; see also Soc. of Holy Transfiguration Monastery, Inc. v. Gregory, 689 F.3d 29, 51 (1st Cir. 2012) ("'No infringement claim lies if the similarity between two works rests necessarily on non-copyrightable aspects of the original . . . .'" (quoting TMTV Corp. v. Mass Prods., Inc., 645 F.3d 464, 470 (1st Cir. 2011)).

We have thus described the inquiry into substantial similarity as embracing two different types of scrutiny. The court initially "dissect[s]" the earlier work to "separat[e] its original expressive elements from its unprotected content." Coquico, 562 F.3d at 68. The two works must then be compared holistically to determine if they are "substantially similar," but giving weight only to the protected aspects of the plaintiff's work as determined through the dissection. See Johnson, 409 F.3d at 19 ("While a finding of substantial similarity vel non derives from an examination of the juxtaposed works as a whole, that examination must focus on 'what aspects of the plaintiff's work are protectible under copyright laws and whether whatever copying took place appropriated those [protected] elements.'" (alteration in original) (quoting Matthews v. Freedman, 157 F.3d 25, 27 (1st Cir. 1998))); Yankee Candle, 259 F.3d at 33 (noting that determining substantial similarity "is not so simple a task . . . as a strict visual

comparison of the two items" because "only the protected expression is relevant" to the inquiry (internal quotation marks omitted) (quoting Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1214 (11th Cir. 2000))). We have explained that two works are substantially similar if "'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 607 (1st Cir. 1988) (quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960) (Learned Hand, J.))). This assessment, of course, must be informed by the dissection analysis.

Although the dissection analysis typically is performed by the court as a matter of law, see infra note 9, the determination of substantial similarity is ordinarily assigned to the factfinder, see, e.g., T-Peg, Inc. v. Vermont Timber Works, Inc., 459 F.3d 97, 112 (1st Cir. 2006).[6] Faced with a motion for summary judgment, however, a court may be asked both to dissect a protected work and to determine whether a reasonable jury could conclude that "an ordinary observer" examining the two works would

_____

[6]The jury necessarily would be instructed on the unprotectible elements of the plaintiff's work and told that it could not consider those elements in evaluating substantial similarity. See, e.g., Oracle America, Inc. v. Google Inc., No. 3-10-cv-03561, Doc. 1018, Final Charge to the Jury, at 12; Fed. Civil Jury Instructions of the Seventh Circuit (2009), at 274, available at http://www.ca1.uscourts.gov/Pattern_Jury_Instr/7th_cir_instruc_2009.pdf.

see the defendant's version as a wrongful appropriation of the plaintiff's protected expression. See, e.g., T-Peg, Inc., 459 F.3d at 112; Johnson, 409 F.3d at 18. We have cautioned that "the court should not lose sight of the forest for the trees" when making these determinations. Coquico, 562 F.3d at 68. The court must "be careful not to over-dissect the plaintiff's work, causing it to ignore the plaintiff's protectable expression." Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC, 560 F.3d 53, 59 (1st Cir. 2009). Likewise, in making the holistic assessment, the court "should take pains not to focus too intently on particular unprotected elements at the expense of a work's overall protected expression." Coquico, 562 F.3d at 68; see also CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1515 (1st Cir. 1996) (recognizing "the potential 'danger . . . that courts . . . will so "dissect" the work as to classify all its elements as unprotectable . . . [thereby possibly] blind[ing it] to the expressiveness of their ensemble'" (alterations in original) (quoting Jane C. Ginsburg, Four Reasons and a Paradox: The Manifest Superiority of Copyright over Sui Generis Protection of Computer Software, 94 Colum. L. Rev. 2259, 2561 (1994))).

Applying these principles to news photography, which seeks to accurately document people and events, can be especially

challenging.[7]  "[A]rtists [ordinarily] have no copyright in the 'reality of [their] subject matter,'" Leigh, 212 F.3d at 1214 (quoting Franklin Mint Corp. v. Nat'l Wildlife Art Exch., Inc., 575 F.2d 62, 65 (3d Cir. 1978)) (third alteration in original), and the news photographer's stock-in-trade is depicting "reality."  Yet "the photographer's original conception of his subject" is copyrightable.  Kisch v. Ammirati & Puris Inc., 657 F. Supp. 380, 382 (S.D.N.Y. 1987) (internal quotation marks omitted).  Courts have recognized originality in the photographer's selection of, inter alia, lighting, timing, positioning, angle, and focus.  See, e.g., Leigh, 212 F.3d at 1215; Mannion v. Coors Brewing Co., 377 F. Supp. 2d 444, 450-51 n.37 (S.D.N.Y. 2005); Kisch, 657 F. Supp. at 382.  Photographers make choices about one or more of those elements even when they take pictures of fleeting, on-the-spot

---

[7] Indeed, courts and commentators have noted that copyright concepts developed for written works imperfectly fit the visual arts, including photography.  See, e.g., Mannion v. Coors Brewing Co., 377 F. Supp. 2d 444, 458 (S.D.N.Y. 2005) (noting that "the [idea/expression] distinction breaks down" in the context of non-verbal media); Rebecca Tushnet, Worth a Thousand Words: The Images of Copyright, 125 Harv. L. Rev. 683, 740 (2012) (noting that "copyright's core doctrines don't work for images"); Hon. Jon O. Newman, New Lyrics for an Old Melody: The Idea/Expression Dichotomy in the Computer Age, 17 Cardozo Arts & Ent. L.J. 691, 703 (1999) ("[W]hat we must strive for is a recognition that the differences among modes of expression oblige us to eschew anything like 'tests' that can yield answers across all fields."); cf. Franklin Mint Corp. v. Nat'l Wildlife Art Exch., Inc., 575 F.2d 62, 65 (3d Cir. 1978) ("Isolating the idea from the expression and determining the extent of copying required for unlawful appropriation necessarily depend to some degree on whether the subject matter is words or symbols written on paper, or paint brushed onto canvas.").

events.  Additional factors are relevant when the photographer does not simply take her subject "as is," but arranges or otherwise creates the content by, for example, posing her subjects or suggesting facial expressions.  See, e.g., Rogers v. Koons, 960 F.2d 301, 307 (2d Cir. 1992) ("Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved."); Mannion, 377 F. Supp. 2d at 450 & n.37 (collecting cases listing "potential components of a photograph's originality").

Although the comparison is not perfect, the division between protected and unprotected elements of a photograph could be likened to the separation drawn by copyright law between protected expression and unprotected ideas.  See Yankee Candle, 259 F.3d at 33 (noting the "key theoretical foundation of copyright law[] that [i]deas cannot be copyrighted" (internal quotation marks omitted) (quoting Concrete Mach., 843 F.2d at 606)).  Where the photographer is uninvolved in creating his subject, that subject matter -- whether a person, a building, a landscape or something else -- is equivalent to an idea that the law insists be freely available to everyone.  See Feist Publ'ns, 499 U.S. at 349-50 ("[C]opyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work."); Concrete Mach., 843 F.2d at 606 ("An artist

can claim to own only an original manner of expressing ideas, not the ideas themselves." (internal quotation marks omitted) (quoting Cooling Sys. & Flexibles v. Stuart Radiator, 777 F.2d 485, 491 (9th Cir. 1985)).[8]  The choices made by the photographer to generate a particular image depicting that subject matter, however, ordinarily transform "the idea" of the subject into a protectible expressive work.  See 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright ["Nimmer"] § 2.08[E][1], at 2-129 (2008) (noting that "almost any[] photograph may claim the necessary originality to support a copyright merely by virtue of the photographers' personal choice of

---

[8]  The merger and scènes à faire doctrines limit the availability of copyright protection even for expression.  The former "'denies copyright protection when . . . there is only one way to express a particular idea.'"  Soc. of Holy Transfiguration Monastery, 689 F.3d at 53 (quoting Coquico, 562 F.3d at 68).  The doctrine of "scènes à faire" "denies copyright protection to elements of a work that are for all practical purposes indispensable, or at least customary, in the treatment of a given subject matter."  Coquico, 562 F.3d at 68; Beal v. Paramount Pictures Corp., 20 F.3d 454, 459 (11th Cir. 1994) (describing scènes à faire as "stock scenes that naturally flow from a common theme," such as "'foot chases and the morale problems of policemen, not to mention the familiar figure of the Irish cop'" in police fiction (quoting Walker v. Time Life Films, Inc., 784 F.2d 44, 50 (2d Cir. 1986))).
In Coquico, we held that the two doctrines together foreclosed copyright protection for elements of a tree frog plush toy that are "ineluctably and inextricably intertwined with the idea of producing a realistic depiction" of the frog.  562 F.3d at 68; see also CMM Cable Rep, 97 F.3d at 1522 n.25 (noting that the rationales for both doctrines are similar "in that both are concerned with preventing a monopoly on commonplace ideas," but differ because "merger applies when the idea and expression are inseparable while scenes a faire applies when the similarity of expression results from stock scenes or elements that necessarily flow from a common idea").

subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken").

Alternatively, subject matter that the photographer did not create could be viewed as "facts" that, like ideas, are not entitled to copyright protection.  The Supreme Court has observed that "[t]he most fundamental axiom of copyright law is that '[n]o author may copyright his ideas or the facts he narrates.'"  Feist Publ'ns, 499 U.S. at 344-45 (quoting Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 556 (1985)) (alteration in original).  The exclusion of facts from copyright protection arises from the constitutional requirement of "originality" -- "[t]he sine qua non of copyright."  Id. at 345.  Facts are "not 'original' in the constitutional sense" because they "do not owe their origin to an act of authorship."  Id. at 347 (citing Nimmer § 2.03[E] (1990)).  Because facts are discovered, rather than created, they are "part of the public domain available to every person."  Id. at 347-48 (internal quotation mark omitted).  Compilations of facts, however, ordinarily are entitled to copyright protection, id. at 344, "'limited to those aspects of the work -- termed "expression" -- that display the stamp of the author's originality.'"  Id. at 350 (quoting Harper & Row, Publishers, 471 U.S. at 547-48).  A photograph that consists of public-domain subject matter may thus be protected from copying because it involves creative expression, but with the protection limited to the work's original elements.

-15-

In sum, in reviewing a grant of summary judgment for the defendant based on the absence of substantial similarity, where neither the subject matter of the earlier work nor its arrangement are attributable to the photographer, as is the case here, we first must look closely to identify the expressive choices in the plaintiff's work that qualify as original.  After performing that dissection, we must consider whether any reasonable jury focusing solely on those original elements could find that the defendant's work is substantially similar to the plaintiff's.  Summary judgment is "'appropriate only when a rational factfinder, correctly applying the pertinent legal standards, would be compelled to conclude that no substantial similarity exists between the copyrighted work and the allegedly infringing work.'"  T-Peg, Inc., 459 F.3d at 112 (quoting Johnson, 409 F.3d at 18).

## III.

It is undisputed both that Harney owns a valid copyright in the Photo and that Sony copied the Photo.  The sole contested element of Harney's infringement claim is whether the Image "can fairly be regarded as appropriating the original expression of the earlier (protected) work" to such an extent that the Image and the Photo are properly described as "substantially similar."  Coquico, 562 F.3d at 67.  Sony emphasizes that it copied "only the bare minimum of the elements needed to conjure up the original" for the purpose of depicting the Photo's prominent role in Gerhartsreiter's

-16-

story.  The company argues that the only similarity between the two works is "essentially the [unprotectible] idea of a young girl atop her father's shoulders," with "the other details in the Photo either . . . significantly altered or omitted entirely."  With the unprotectible elements excluded, Sony asserts, "there is no substantial similarity in the respective expressions . . ., and therefore no infringement."

Unsurprisingly, Harney sees a much closer relationship between the two works.  He asserts that the Photo "captivated the public's imagination" because of "its haunting depiction of the lie that was Clark Rockefeller's life," and he argues that "[t]he works are substantially similar because Sony took the expressive heart from Harney's Photograph."  He notes Sony's admission that it intended to replicate the Photo and points out that Sony copied "numerous elements" of his image, including "the angle from which the picture was taken, the pose, the wardrobe, and even the color and type of Reigh's coat and the paper Rockefeller has clenched to his chest in his right hand."  Harney maintains that the alterations Sony made to "details around the periphery" of his image "do not change the core similarity between the works" and, "most importantly, the alterations made no change to what these works express about the Rockefeller story."  Therefore, he states, "a reasonable juror could find that the works are substantially similar."

The parties thus agree that the two photographs bear a resemblance. Indeed, Sony sought to create just such an impression of similarity. The question before us is whether the equivalence between the works can support a copyright infringement claim.

## A. Standards of Review

We review de novo the district court's identification of the protectible elements of a copyrighted work. See Soc. of Holy Transfiguration Monastery, 689 F.3d at 51 ("Our review as to the carved out originality components of a work is de novo."); Coquito, 562 F.3d at 68 (same).[9] Although the ultimate question of substantial similarity requires a factual judgment, it may be resolved on summary judgment "where reasonable minds cannot differ." Yankee Candle, 259 F.3d at 37; see also, e.g., Soc. of Holy Transfiguration Monastery, 689 F.3d at 54 (affirming grant of summary judgment for the plaintiff); Kisch, 657 F. Supp. at 382

---

[9] As described above, we have treated dissection as a legal determination in which the court identifies which parts of a copyrighted work constitute original expression. Although we have observed that "originality can be a question of fact for the jury," CMM Cable Rep, 97 F.3d at 1517, the dissection analysis here does not depend on resolving factual disputes -- for example, whether particular elements of the Photo were "independent creations" rather than copied from another source. See Feist Publ'ns, 499 U.S. at 346 (noting that "originality requires independent creation plus a modicum of creativity"). The district court therefore properly performed the dissection as a matter of law, see Soc. of Holy Transfiguration Monastery, 689 F.3d at 47 ("Assessing whether a work is original is a matter of law."), and we accordingly follow our precedents stating that de novo review applies to "the originality vel non of the constituent elements of the copyrighted work," Coquico, 562 F.3d at 68.

(holding that non-infringement may be decided as a matter of law "either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar" (emphasis omitted) (quoting Warner Bros. Inc. v. Am. Broad. Cos., 720 F.2d 231, 240 (2d Cir. 1983)) (internal quotation marks omitted)). The district court's decision to grant summary judgment is reviewed de novo. TMTV, Corp., 645 F.3d at 469.

## B. The District Court's Ruling

In performing the dissection analysis required by our precedent, the district court observed that Harney did not prearrange the subject matter of the Photo:

> Harney captured a moment in time of a father and daughter passing through Beacon Hill. The Rockefellers were not models. Harney did not select their clothes, give them a church program and palm leaf as props, or ask them to pose. Those aspects of the Rockefellers' appearance are factual realities that exist independently of any photo. They are not Harney's original expression, and they are not copyrightable elements of his photograph.

The court acknowledged Harney's "significant creative input" in combining various elements -- Gerhartsreiter and Reigh in the foreground, holding the program and palm leaf, and the church in the background -- to "evok[e] the essence of Beacon Hill on Palm Sunday." The court also observed that "[t]he lighting in the

-19-

photograph highlights the church and the young daughter and displays the long shadows of early spring." The court noted, however, that the Image did not share Harney's expressive elements, pointing in particular to elimination of the palm leaf and church.

The court thus concluded that the only common element of the two photographs for which Harney could take credit was "the position of the individuals relative to the boundaries of the photo, although in the original Clark Rockefeller's face is closer to the camera and less of his body is visible." It concluded that "[t]his limited sharing" did not infringe Harney's copyright. It explained:

> The message conveyed by the Sony Images is the factual information about the Rockefellers' appearance. There is nothing suggestive of Beacon Hill or a religious context. The positioning of the Rockefellers in the middle of the frame, visible from mid-chest upward, is an element of minimal originality and an insufficient basis, without more, to find substantial similarity.

## C. Dissection

We note at the outset of our discussion that Harney undisputedly produced an original, expressive work. Indeed, it is possible to identify multiple ideas creatively expressed through the Photo's combination of images. The district court noted one: "the essence of Beacon Hill on Palm Sunday." In addition, the piggyback pose of the smiling father and child as they exited church on a bright sunny day -- the Photo's dominant image --

suggests the idea of close family ties and, in particular, father-daughter bonding. Over time, as Harney argues, the Photo also came to represent a specific father-daughter story and the deception at its foundation.

These ideas are expressed with artistic flair: the framing of Gerhartsreiter and Reigh against the backdrop of the church reflects a distinctive aesthetic sensibility, and Harney's artistry also is reflected in the shadows and vibrant colors in the Photo -- perhaps the result of his use of an electronic flash and professional editing software. Positioning the pair in the middle of the frame as they look straight into the camera, and at a close distance, also involves aesthetic judgments that contribute to the impact of the photograph.

Inescapably, however, Harney's creation consists primarily of subject matter -- "facts" -- that he had no role in creating, including the central element of the Photo: the daughter riding piggyback on her father's shoulders. Harney nonetheless asserts that there are "no unprotectable elements that ordinary observers should exclude from their analysis" of substantial similarity. He argues that, rather than separating out the "independently existing facts" contained in the Photo, the district court should have focused on the photograph's unique expression of the Rockefeller saga. He claims that the court's dissection analysis "failed to cut fine[ly] enough, throwing out the work's

-21-

expressive content with the bathwater of 'independently existing facts.'" Under a "proper dissection," he argues, "the fact finder should be allowed to consider the similarities in the pose of the Rockefellers because Sony copied the pose for its expressiveness, not [its] factual value." Simply stated, Harney's view appears to be that ordinary dissection analysis is inapposite because Sony copied the Photo's expression of "the Rockefeller Story" and not simply the factual content of his photograph.

For multiple reasons, we are unpersuaded that this is an appropriate way to evaluate Harney's infringement claim. First, Harney's argument leaves no room for the dissection analysis that our precedent prescribes. The premise of the dissection analysis is that protectible expression is sometimes constructed from components that are free for the taking. The Supreme Court has noted that "facts themselves do not become original through association," Feist Publ'ns, 499 U.S. at 349, confirming the need to identify the unprotected elements in a protected work so that only unlawful copying is penalized. Although the Supreme Court made its observation in a very different context -- determining the copyright protection available for telephone directory white pages, id. at 342 -- the same principle is inherent in the proposition, accepted as applicable to photography, that artists may not copyright the "reality of [their] subject matter," Leigh, 212 F.3d at 1214 (internal quotation marks omitted) (quoting Franklin Mint

Corp., 575 F.2d at 65) (alteration in original).  We therefore reject Harney's assertion that we should not catalog the protectible and unprotectible elements of the Photo.

A second problem with Harney's argument is that he seeks to enlarge the scope of his copyright protection by attributing to the Photo an idea -- Gerhartsreiter's deception -- that is not discernible from the image itself and did not originate with him. The idea of the deception, of course, is not itself protectible. The Photo of the smiling pair may be understood as an expression of that idea only when we take into account the subsequent events that revealed the falsity underlying the specific father-daughter relationship that Harney randomly documented.  Indeed, expanding a photograph's copyright protection based on later events appears to be what Harney has in mind when he asserts that "we cannot penalize authors who are fortunate enough to have once obscure works suddenly become important due to their relevance to changing circumstances."  Harney warns that rejecting copyright protection for photographs whose significance the photographer "could not have foreseen . . . when he snapped the shutter [would cause] every stock photograph ever taken [to] enter[] the public domain."

We have sympathy for Harney's concern about the protection afforded to spontaneous photography, which by its nature consists primarily of "[i]ndependently existing facts."  Indeed, assuring copyright protection for fleeting images of newsworthy

-23-

persons or events encourages freelance photographers to continue creating new images, advancing the goal of the Constitution's copyright clause "to promote the Progress of . . . useful Arts," U.S. Const., art. I, § 8, cl.8.  See Fitzgerald v. CBS Broad., Inc., 491 F. Supp. 2d 177, 189 (D. Mass. 2007) ("It is hard to imagine that freelance photojournalists would continue to seek out and capture difficult to achieve pictures if they could not expect to collect any licensing fees.").  We disagree, however, that application of the ordinary dissection analysis will deny copyright protection for such works.  As described above, Harney created an original protectible image.  His photograph may not be reproduced in its entirety without his permission unless the copier is able to prove fair use.  Nor may the original components noted above, including the particular juxtaposition of the father-daughter and the church, be freely copied if an ordinary observer would view the resulting image as "substantially similar" to his original.

Certainly, the value of an image can change over time along with observers' attitudes toward its subject matter. Photographs of celebrities as children or unusual images of notable buildings later demolished may become of wide interest decades after they were taken.  Likewise, the actual identity of the father and child in Harney's photograph became important only after Reigh's abduction.  While Harney should benefit from the added interest in his photograph, as he did through the payments from

-24-

<u>Vanity Fair</u> and other publications, such newfound interest does not change the originality vel non of the individual components of the work. It does not, in other words, change Harney's creative contributions to the Photo. Moreover, recalibrating a work's originality based on a new idea of what it expresses would undermine the distinction that remains between ideas and expression in visual works. In short, we do not see how subsequent events can fortuitously transform unoriginal elements of a visual work into protectible subject matter.[10]

For similar reasons, we also reject the argument that failing to classify the piggyback pose of Clark and Reigh as a protectible aspect of the Photo is an instance of "los[ing] sight of the forest for the trees." <u>Coquico</u>, 562 F.3d at 68. Harney describes this central image of the photograph as its "expressive heart." Yet, as we have explained, any expression of the Gerhartsreiter story seen in the Photo is attributable not to the photograph itself but to unrelated news events that associated the Photo with the new idea of deception. That new association did

_____

[10] We note that originality in timing has been recognized as one aspect of news photography worthy of protection. <u>See</u> <u>Mannion</u>, 377 F. Supp. 2d at 452-53 (stating that "'[a] person may create a worthwhile photograph by being at the right place at the right time'" (quoting 1 Hon. Sir Hugh Laddie, et al., <u>The Modern Law of Copyright and Designs</u> (3d ed. Butterworths 2000) § 4.57, at 229)); <u>id.</u> at 453 (citing as an example of "originality in timing" the photograph by Alfred Eisenstaedt "of a sailor kissing a young woman on VJ Day in Times Square"). This case does not involve a unique or unusual moment fortuitously captured by a photographer.

-25-

not, however, change the character of the Photo's unprotectible factual components.

Hence, we agree with the district court's application of the dissection analysis and its recitation of the unprotected and protected elements of the Photo. Harney may not claim exclusive rights to the piggyback pose of Gerhartsreiter and Reigh, their clothing, the items they carried, or the Church of the Advent shown with bright blue sky behind it. However, the framing of Gerhartsreiter and Reigh against the background of the church and blue sky, with each holding a symbol of Palm Sunday, creates a distinctive, original image. Harney's creativity is further reflected in the tones of the Photo: the bright colors alongside the prominent shadows. Finally, the placement of the father and daughter in the center of the frame, with only parts of their bodies depicted, is composition both notable and protectible.

We thus turn to consider whether the Image unlawfully appropriated an impermissible portion of the plaintiff's "original expressive elements," Coquico, 562 F.3d at 68.

## D. Substantial Similarity

Harney's difficulty in alleging infringement is that almost none of the protectible aspects of the Photo are replicated in the Image. Without the Palm Sunday symbols, and without the church in the background -- or any identifiable location -- the Sony photograph does not recreate the original combination of

father-daughter, Beacon Hill and Palm Sunday.  Although the two photographs appear similar upon a first glance, that impression of similarity is due largely to the piggyback pose that was not Harney's creation and is arguably so common that it would not be protected even if Harney had placed Gerhartsreiter and Reigh in that position.  See Mannion, 377 F. Supp. 2d at 462 (suggesting that the subject's pose was "arguably in the public domain"); cf. Rogers, 960 F.2d at 304 (noting that "[s]ubstantial creative effort went into both the composition and production" of a photograph where the photographer, inter alia, selected the light, the location, and the arrangement of the couple and their eight puppies on a bench).  Significantly, the two photographs are notably different in lighting and coloring, giving them aesthetically dissimilar impacts.  Harney's features vivid colors and distinct shadows, while the Image is washed out and is far less attractive or evocative.[11]

The Image does copy the placement of Gerhartsreiter and Reigh in the frame -- which was Harney's choice and thus an element of original composition.  We agree with the district court, however, that locating the subject of a photograph in the middle of a frame is "an element of minimal originality and an insufficient basis, without more, to find substantial similarity."

---

[11] In his affidavit, Harney stated that he "used fill-in flash to separate the subjects from the background and to reduce the shadows on their faces."

Two other cases addressing the alleged infringement of distinctive photographs are instructive by comparison. The plaintiff's photograph in Leigh was of a statue known as the "Bird Girl" that appears on the cover of the book Midnight in the Garden of Good and Evil. 212 F.3d at 1212. Defendant Warner Brothers created still photos of a replica of the statue for use in promoting a movie based on the book. Id. at 1212-13. In concluding that the issue of substantial similarity was a jury question, the Eleventh Circuit noted that the plaintiff's and defendant's photographs shared a number of expressive elements: distinctive lighting and angle, hanging Spanish moss bordering their tops, the statue close to center of the frame, and monochromatic shading. Id. at 1216. The court stated that "[t]hese expressive elements all make the pictures more effective," observing that "[t]he location of the statue and the lighting in the pictures together draw the viewer's attention." Id. Here, by contrast, the important differences in lighting and backdrop render the photos aesthetically more dissimilar than similar, notwithstanding the common positioning of the father and daughter within the frame.

The defendant's image in Mannion similarly incorporated multiple distinctive elements of the plaintiff's photograph. See 377 F. Supp. 2d at 447-48. Jonathan Mannion created a three-quarter-length portrait of basketball star Kevin Garnett, with a

-28-

background of clouds. The defendants' photo depicts the torso of a muscular black man, not Garnett, also shot against a cloudy backdrop. In each photo, the subject is wearing a white t-shirt and white athletic pants, and large amounts of jewelry. The lighting, pose and angle are similar. The court noted that Mannion had "orchestrated the scene" of his photograph by, inter alia, telling Garnett how to dress and pose. Id. at 455. It further observed that the defendants had "recreated much of the subject that Mannion had created and then, through imitation of angle and lighting, rendered it in a similar way." Id. at 463. The photos, however, also had some differences: one was black and white, and the other was color; the jewelry was not identical; and one t-shirt appeared more tightly fitted.

Given the similarities and differences, the court in Mannion concluded that a reasonable jury "could find substantial similarity either present or absent." Id. Although Harney argues that here, too, there are similarities and differences that warrant a jury judgment, this case is notably distinguishable from Mannion. Harney happened upon Gehartsreiter and Reigh. Unlike Mannion, he did not "create" his subject by "orchestrat[ing] the scene."

We recognize that Sony's Image and Harney's Photo are similar, as Sony intended. But as we have explained, the question of infringement is governed not merely by whether the copy mimics the plaintiff's work, but also, more importantly, by whether the

-29-

similarity arises from protected elements of the original. <u>See</u>, <u>e.g.</u>, <u>Johnson</u>, 409 F.3d at 19 (noting that "an overall impression of similarity may not be enough" "[i]f such an impression flows from similarities as to elements that are not themselves copyrightable"); <u>see also</u> <u>Warner Bros.</u>, 720 F.2d at 241 (noting that "'a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's'" (quoting 3 <u>Nimmer</u> § 13.03[B] at 13-38.1 to -38.2 (1983))).

Sony copied little of Harney's original work -- only the placement of Gerhartsreiter and Reigh in the photograph -- and no jury could conclude that the similarity resulting solely from that copying is substantial. Moreover, given the differences in background, lighting and religious detail, a reasonable jury comparing the entirety of the two works could not conclude that the ordinary observer would "regard their aesthetic appeal as the same." <u>Peter Pan Fabrics</u>, 274 F.2d at 489.

## IV.

We can understand the frustration of photographers such as Harney whose works are afforded a limited copyright because they are comprised substantially of unprotected content. As the Supreme Court has emphasized, however, "this is not 'some unforeseen byproduct of a statutory scheme.'" <u>Feist Publ'ns</u>, 499 U.S. at 349

(quoting <u>Harper & Row, Publishers</u>, 471 U.S. at 589 (Brennan, J., dissenting)).

> It is, rather, "the essence of copyright," and a constitutional requirement. The primary objective of copyright is not to reward the labor of authors, but "[t]o promote the Progress of Science and useful Arts." Art. I, § 8, cl. 8. To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.

<u>Id.</u> at at 349-50 (alteration in original) (citations omitted).

For the reasons we have explained, no jury could properly conclude that Sony's adaptation of the Photo infringed Harney's copyright in his work. Accordingly, we affirm the judgment of the district court.

<u>So ordered.</u>



Harney Photo



Sony Image